## LARKINS *v.* BALTIMORE TRANSIT COMPANY, ET AL.

[No. 140, September Term, 1967.]

*Decided March 19, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, MCWILLIAMS and SINGLEY, JJ.

*Samuel Kimmel,* with whom was *Joseph K. Pokorny* on the brief, for appellant.

*Edward J. Thompson* for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

This is the case of the wayward bus.[1] Appellant (Larkins), in the trial below, claimed to be a beneficiary of the doctrine of res ipsa loquitur. The trial judge, unpersuaded, directed a verdict for the appellees at the close of the plaintiff's (Larkins') case. We take a somewhat different view of Larkins' case.

To fully comprehend the nature of the downtown Baltimore intersection where the bus went astray one needs to glance once or twice at the attached sketch as it is being described. Saratoga Street runs steeply downhill from A to B. From B to D (the bed of St. Paul Street, upper level) Saratoga Street is relatively level. From D to E it becomes steep again, levels off somewhat from E to F (the bed of St. Paul Street, lower level) and from F to G it is about as steep as from A to B. Between A and B on Saratoga Street there are 3 traffic lanes. The two northernmost lanes are for westbound traffic only; the southernmost lane is for the exclusive use of *eastbound*

---

1. With apologies to John Steinbeck whose novel, *The Wayward Bus,* was published in 1947.

transit buses which must turn right at H and proceed in a southerly direction on St. Paul Street (upper level). Between B and G Saratoga Street is one way westbound. Charles Street is one way northbound; St. Paul Street, upper level, between C and D is one way northbound; between C and B it is one way southbound. St. Paul Street, lower level, is one way southbound.

Phase I of Baltimore's Snow Emergency Plan[2] went into effect at 12:01 A. M. on Monday, 13 January 1964. Just before 11:30 A. M. on that day Larkins, a printer, was southbound on St. Paul Street, lower level. Snow was falling and the streets were covered with snow. Larkins had both snow tires and chains

**2.** Phase I of the Baltimore City Snow Emergency Plan requires that motor vehicles traveling on designated snow emergency routes be equipped with snow tires or chains.

on his car, which was a 1956 4-door Chevrolet station wagon, and so far he had experienced no problems in controlling it. He intended to turn right and go west on Saratoga Street. Apparently the combination of the steep grade and the snow covered surface of the street so reduced the effectiveness of his front wheels that, when turned to the right, the car slid straight ahead instead of turning to the right. Larkins backed up a short distance and was in the act of making the turn, successfully this time, when the bus appeared suddenly, collided with his vehicle and continued on in an easterly direction for 10 or 12 feet before coming to rest. The right front of the bus struck the right rear of Larkins' station wagon.

The appellee Campbell, the bus driver, told Larkins after the collision that he knew "it [the bus] had to stop somewhere." Larkins' statement that the tires on the bus were not snow tires was stricken by the trial judge but he was allowed to testify that they were tires of a design one "would normally find on a car or a truck in normal weather." There were no tire chains on the bus.

Appellees requested Larkins to admit, as provided by Maryland Rule 421, the truth of certain statements, two of which read as follows:

> "That just prior to the happening of the collision referred to in Plaintiff's Declaration, Defendant's bus was proceeding in an easterly direction downgrade in the southernmost traffic lane along Saratoga Street approaching St. Paul Street."
>
> "That at the time of, and just immediately prior to the collision between Plaintiff's vehicle and Defendant's bus, as alleged in the declaration, the said bus was in the act of skidding or sliding on the snow covered street downgrade along Saratoga Street."

The statements were deemed to be admitted because of Larkins' failure to reply to the appellees' request. Maryland Rule 421 b 2.

Despite all the discussion of res ipsa loquitur, both in the trial below and in the briefs and arguments submitted to us, we do not think that doctrine has any application here. Larkins pro-

duced a single, conspicuous and significant item of evidence which in itself was enough to defeat appellees' motion for a directed verdict. We refer, of course, to his testimony, the truth of which we are bound to assume, that, at the moment of collision, the bus was moving in the wrong direction on a one-way street, in violation of both the Baltimore City ordinance and Code, Art. 66½, § 222, and there arises the clear inference that this was the direct and proximate cause of the collision. In *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 360-61, 121 A. 2d 188 (1956), Judge Delaplaine, for the Court, said:

"It is an established principle that a driver who fails to comply with Section 182 [now § 217] of the Motor Vehicle Law, which generally requires drivers of motor vehicles to keep to the right of the center of the roadway, is *prima facie* guilty of negligence where the violation directly and proximately causes a collision resulting in injury, and the *burden is then cast upon the driver to overcome the presumption of negligence by showing that he was justified in driving in the center or upon the left half of the road.* But we have made it clear that a violation of this rule does not constitute negligence except where it is the direct and proximate cause of the injury. *Kelly v. Huber Baking Co.,* 145 Md. 321, 125 A. 782; *Lusk v. Lambert,* 163 Md. 335, 163 A. 188; *Consolidated Gas, Electric Light & Power Co. v. O'Neill,* 175 Md. 47, 200 A. 359; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *Cocco v. Lissau,* 202 Md. 196, 199, 95 A. 2d 857." (Emphasis supplied.)

If a driver, in these circumstances, who fails to keep to the right of a two-way street is prima facie guilty of negligence, one need not torture the principles of logic to conclude that a driver who operates his vehicle in the wrong direction on a one-way street is likewise prima facie guilty of negligence. Indeed, the Massachusetts Supreme Court after holding the driver of an automobile operated in the wrong direction along a one-way street to be a trespasser went further and held that the driver's guest was also a trespasser. *Widronak v. Lord,* 168 N. E. 799 (Mass. 1929).

Nevertheless, appellees insist that absolution is provided by our holding in *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959), where it was said "the mere fact that a vehicle skids or slides on a highway does not of itself constitute evidence of negligence." Appellees may in the end derive some comfort from that holding, but they must first shoulder the burden of going forward with the evidence and justify the operation of the bus in the wrong direction on a one-way street. Assuming, upon remand, that some such showing can be made, appellees should keep in mind what we said in *Smith v. Baltimore Transit Co.,* 214 Md. 560, 568, 136 A. 2d 386 (1957) :

"Skidding may be evidence of negligence *if it appears* that it was caused by a failure to take reasonable precautions to avoid it, when the conditions at the time make such a result probable in the absence of such precautions. To the same effect see, *State, Use of Whitaker v. Greaves,* 191 Md. 712, 62 A. 2d 630." (Emphasis supplied.)

*Judgment reversed.*
*Case remanded for a new trial.*
*Appellees to pay the costs.*