# THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF BALTIMORE ET AL. *v.* POTTER

[No. 176, September Term, 1972.]

*Decided February 28, 1973.*

286

The cause was argued before MURPHY, C. J., and SING-
LEY, SMITH, DIGGES and LEVINE, JJ.

*Simon Schonfield, Assistant City Solicitor,* and *J.
Warren Eberhardt, Assistant City Solicitor,* with whom
was *George L. Russell, Jr., City Solicitor,* on the brief,
for appellants.

*Samuel M. Campanaro* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City
Court (Harris, J.) granting a writ of mandamus direct-
ing that appellants, Board of Fire Commissioners of the
City of Baltimore (the Fire Board), the Mayor and City
Council of Baltimore (the City) and the Trustees of The
Fire and Police Employees' Retirement System of the
City of Baltimore (Retirement System) pay appellee,
Thomas F. Potter (Potter), his full salary from Decem-
ber 11, 1970 to June 3, 1971; and commanding the Re-
tirement System to revise its records to indicate June 3,
1971 as the effective date of Potter's retirement from the
Fire Department on special disability retirement benefits.

Potter, a Battalion Chief with thirty-four years ser-
vice with the Fire Department, was placed "off-duty" by
the Department's physician on June 12, 1970 due to a
"line of duty" injury to his right heel sustained on June

3, 1970. He thereafter was hospitalized three times and underwent surgery four times prior to December of 1970. On December 4, 1970, at the Department's suggestion, Potter applied to the Retirement System for special disability retirement benefits pursuant to Baltimore City Code (1966 Ed.), Article 22, § 34 (e), which provides:

> "Upon the application of a member or the head of his department, any member who has been totally and permanently incapacitated for duty as the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, shall be retired by the Board of Trustees, provided that the medical board shall certify that such member is physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

Informed by the Retirement System of Potter's application, the Fire Board removed Potter from the Department's payroll on December 11, 1970. Shortly thereafter, the Fire Board promoted another employee to fill Potter's position as Battalion Chief. From December 11, 1970 to January 4, 1971, Potter received no payments from either the Fire Board or the Retirement System. Between January 4, 1971 and April 1, 1971, the Retirement System paid Potter ordinary service retirement benefits as a voluntary stop-gap measure pending final decision on his application for special disability benefits.[1]

On April 1, 1971, the Retirement System approved Potter's application for special disability benefits to "become effective the first day following the last day for

---

1. Special disability benefits are to be distinguished from service retirement benefits, which are dependent on age and years of creditable service, Article 22, § 34 (a), (b), and from ordinary disability retirement benefits requiring permanent incapacitation for further duty from non-job related disability, Article 22, § 34 (c), (d). The allowance for special disability benefits, an annuity plus pension of 66⅔% of average final compensation, Article 22, § 34 (f), is the highest of the three types of retirement benefits.

which he will be paid on the regular departmental pay-roll."

On April 5, 1971, the Fire Board, having received confirmation that the Retirement System had approved Potter's application for special disability benefits, requested a supplemental appropriation from the City to pay Potter his full salary from December 11, 1970 to June 3, 1971 pursuant to Baltimore City Code, Article 9, § 13, which provides:

> "Any member of the Fire Department of the City of Baltimore, receiving injury or becoming disabled, while in the discharge of his duties, so as to prevent him from following his daily occupation or attending to his duties as a member of said department, such member shall, for the space of twelve months, provided his disability shall last that time, receive his usual salary."

The Fire Board's request for the supplemental appropriation was denied; the denial was based on an opinion of the City Solicitor, dated June 25, 1971, which concluded that because salary benefits payable under Article 9, § 13 can only be made to a "member of the Fire Department," after Potter was determined to be within the mandatory retirement provisions of Article 22, § 34 (e), he was no longer a "member" of the Department and thus was not entitled to benefits under Article 9, § 13. The City Solicitor ruled that the effective date of Potter's retirement on special disability benefits was December 4, 1970, this being the date of Potter's application therefor, and that he was eligible for full salary benefits under Article 9, § 13 only from June 3, 1970 to December 4, 1970.

Potter claimed that he was entitled to one year full salary under Article 9, § 13, and, at the expiration of that year, to special disability retirement benefits under Article 22, § 34 (e). He urged that the benefits provided by Article 22, § 34 (e) supplemented those provided un-

der Article 9, § 13, the latter providing protection to the injured employee during the fixed and definite recuperative period of a year (provided his disability shall last that time), and the former section providing for his retirement benefits in the event the injuries he sustained were found by the Retirement System to be permanent and the employee no longer able to perform his duties in the Fire Department. In support of his position, Potter maintained that both ordinances were mandatory; that they were not inconsistent with each other; that they could be construed so as to complement each other; that the ordinances constituted remedial legislation and required a liberal construction in favor of the employee in order to effectuate their benevolent purposes; and that administrative officials charged with their enforcement had consistently so construed the ordinances.

Answering Potter's suit, the appellants contended that he was entitled to full pay through December 11, 1970, but that after that time, when it became apparent from Potter's physical condition, and from his application for special disability retirement benefits, that his injury would permanently incapacitate him, the provisions of Article 22, § 34 (e) became operative and interdicted Potter's claim to full salary benefits under Article 9, § 13. Applying the definitions contained in the "Pension Ordinance," Article 22, §§ 30 and 31,[2] appellants maintained that from the date Potter received pension benefits

---

2. § 30 provides in pertinent part:

"(2) 'Employee' shall mean any officer or employee . . . of the Fire Department of Baltimore City, except as hereinafter excluded, whose compensation is paid by the Mayor and City Council of Baltimore . . . .

"(3) 'Member' shall mean any person included in the membership of the system as provided in Section 3 of this Article.

"(10) 'Beneficiary' shall mean any person in receipt of a pension, an annuity, a retirement allowance or other benefit as provided by this subtitle.

"(16) 'Retirement' shall mean withdrawal from active service with a retirement allowance granted under the provisions of this subtitle."

§ 31 provides in pertinent part:

"(4) 'Membership'—Should any member . . . become a beneficiary . . . he shall thereupon cease to be a member."

he was no longer a "member" of the Fire Department within the meaning of Article 9, § 13. Appellants maintained that by enactment of Article 22, § 34 (e), Article 9, § 13 was repealed, either expressly by Article 22, § 40 (c) [3] or by necessary implication to the extent of the inconsistency.

The parties agreed that Potter was not entitled to simultaneously receive both Article 9, § 13 salary payments and Article 22, § 34 (e) special disability retirement benefits; that the former required that the recipient be a member of the Department, the latter that he be retired from that position as a beneficiary of the Retirement System; and that the requirements were mutually exclusive and the monies could not be simultaneously received.

At the trial before Judge Harris evidence was introduced—not disputed by appellants—that prior to Potter's case it was the long-standing administrative practice of the City and the Fire Board to pay a fireman, injured in the line of duty, his full salary for one year subsequent to his date of injury (if his disability lasted that long) in accordance with the provisions of Article 9, § 13.

In deciding that Potter was entitled to his full salary for one year under Article 9, § 13, and thereafter to special disability retirement benefits under Article 22, § 34 (e), Judge Harris, in a very lucid analysis, said:

> "An examination of Article 9, Section 13 and Article 22, Section 34 (e) reveals, although different verbiage is used, that both ordinances relate to employees who have been injured in the course of their employment i.e., 'line of duty' injuries. Statutes which relate to the same general subject matter, and which are not inconsistent with each other, should be construed to-

---

3. "All provisions of law inconsistent with the provisions of this subtitle are hereby repealed to the extent of such inconsistency."

gether so that, if possible, they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other. *May v. Warnick,* 227 Md. 77 (1961). However, if the provisions of such statutes are irreconcilable, the later statute governs to the extent of the conflict. *Department of Motor Vehicles v. Greyhound Corp.,* 247 Md. 662 (1967). (Article 22, Section 34 (e) is the later ordinance here, having been enacted in 1962; Article 9, Section 13 was originally enacted in 1879).

"Thus, the inquiry of this Court narrows to the question of whether there is any manifest inconsistency between Article 9, Section 13 and the relevant sections of Article 22.

"This Court finds no inconsistency between them. The only limitation which Article 9, Section 13 places upon a member of the Fire Department, in collecting his full salary for a twelve month period subsequent to the date of his injury, is that the injury must last for that period of time. Article 22, Section 34 (e), does not place any limitation on the period of time in which a member must be retired to be paid special disability benefits. Compare Sections 34 (a) (Service Retirement Benefits) and 34 (c) (Ordinary Disability Retirement Benefits), under which the Board of Trustees must retire a member in service not less than thirty nor more than ninety days following the date of the filing of the application for retirement.

"If Article 22, Section 34 (e) included a time period during which it becomes mandatory for a fireman, injured in the line of duty, to be retired, perhaps the defendants' argument would be valid. However, absent any express authorization in the ordinance for the defendants to re-

move the petitioner from the 'active' payroll, and absent any mandatory retirement period (less than the twelve month period following the injury as provided in Article 9, Section 13), the defendants are without authority to refuse to pay petitioner his full salary for a twelve month period following his injury, providing only that his injury lasts that long. The action of the defendants in removing Chief Potter from the payroll as of December 11, 1970, flies in the face of the clear, mandatory language of Article 9, Section 13. The defendants cannot prevent Chief Potter from being a 'member' of the Fire Department by summarily removing him from the payroll when he filed his application for retirement. Under Article 9, Section 13, petitioner must be paid his full salary for a period of twelve months subsequent to the date of his injury.

"The result of this case could impose an unjustified economic burden on the taxpayers of Baltimore City, for it is certainly improvident to pay an employee his *full* salary during a twelve month period in which he cannot work. If the situation is to be remedied, the City Council can repeal Section 13 of Article 9. In the meantime, however, the Court must interpret the law as it is written.

\* \* \*

"The petitioner, of course, is not entitled to collect his full salary, and at the same time retain the benefits that were awarded to him between January 4, 1971 and April 1, 1971. Financial adjustments will have to be made to assure that the petitioner will receive not more than his full salary from June 3, 1970 to June 3, 1971. As of June 4, 1971, petitioner is entitled to 'special disability benefits' pursuant to Article 22, Section 34 (e)."

We fully agree with the conclusions reached by Judge Harris and since we cannot improve upon his opinion, we adopt its substance in affirming his order granting the writ of mandamus. In doing so, we especially note that Article 9, § 13 was enacted by Ordinance No. 35 on March 24, 1871 at a time when there was neither a retirement system, nor medical or workmen's compensation benefits available to members of the Department injured in the line of duty. In 1880, the Mayor and City Council were authorized "to appropriate a sum of money, annually, for the relief of disabled and superannuated firemen of Baltimore City . . . under the control and supervision of the Board of Fire Commissioners of Baltimore City." Laws of Maryland 1880, ch. 409. See Code of Public Local Laws (1888), Article 4, §§ 315, 315A. When the City instituted its Employees' Retirement System in 1926, available to members of the Department, Article 22, § 6 (e), the prototype for the later enacted Article 22, § 34 (e), provided accidental disability benefits. In 1962, the Fire and Police Employees' Retirement System was created as a separate branch of the Retirement System, and Article 22, § 34 (e) was enacted in its present form.

At no time throughout these various changes was any modification made in Article 9, § 13, despite the fact that the consistent practice of the administrative bodies entrusted with dispensing these benefits had been to allow the full year of salary before commencing payment of special disability retirement benefits. The uncontested testimony at trial of the Executive Secretary of the Fire Board for the past eighteen years was to this effect; and such was the practice previously noted by us, but never directly considered. See *Saxton v. Board of Trustees of Fire and Police Employees Retirement System,* 266 Md. 690, 691, 296 A. 2d 367 (1972) ; *Severn v. City of Baltimore,* 230 Md. 160, 163, 186 A. 2d 199, 200 (1962).

In *Montgomery County v. Bigelow,* 196 Md. 413, 423, 77 A. 2d 164, 168 (1950), we said: "If two legislative acts can reasonably be construed together so as to give

effect to both, such a construction is to be preferred." *See also May v. Warnick,* 227 Md. 77, 175 A. 2d 413 (1961). Since Article 9, § 13 and Article 22, § 34 (e) "are neither irreconcilable nor mutually repugnant, they should be construed in harmony with their respective objects and tenor." *Smith v. Gray Concrete Pipe Company, Inc.,* 267 Md. 149, 155, 297 A. 2d 721, 725 (1972), and cases there cited. There being no conflict between the two ordinances, we need not consider the question of repeal by implication, a construction never favored by the courts. *See Mayor and City Council of Baltimore v. Silver,* 263 Md. 439, 283 A. 2d 788 (1971), *appeal dismissed,* 409 U.S. 810, 93 S. Ct. 38, 34 L.Ed2d 65 (1972); *Maryland-National Capital Park and Planning Commission v. Silkor Development Corp.,* 246 Md. 516, 229 A. 2d 135 (1967); *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A. 2d 103 (1954). And by so harmonizing the two enactments, proper weight is afforded the long continued administrative practice followed under the ordinances. *See Williams v. Associated Professors of Loyola College,* 257 Md. 316, 263 A. 2d 5 (1970); *Alban Tractor Co., Inc. v. State Tax Commission,* 219 Md. 593, 150 A. 2d 456 (1959); *Comptroller of Treasury v. M.E. Rockhill, Inc.,* 205 Md. 226, 107 A. 2d 93 (1954).

That Potter accepted payments from the Retirement System from January 4 to April 1, 1971 does not constitute a waiver of his rights to full salary benefits under Article 9, § 13, particularly since he was removed from the departmental payroll and induced to apply for retirement, the payments received by him were unsolicited service retirement benefits for which he had not applied, and he relied on the long-standing administrative practice controlling the payment of such benefits.

As the vacancy created by Potter's "retirement" has already been filled (and as Potter has been conclusively determined to be disabled from further duty), a supplemental appropriation will be required to pay his salary for six months, as ordered by the lower court. If, as Judge

Harris so cogently observed, the application of these ordinances places an undue burden on the taxpayers of Baltimore City, their resort is to the City Council to amend or repeal Article 9, § 13. *See Saxton v. Board of Trustees of Fire and Police Retirement System, supra,* 266 Md. at 694, 296 A. 2d at 369. The courts are without power to alter the existing ordinances.

> *Order affirmed; appellants to pay costs.*