# HARDEN ET AL. *v.* MASS TRANSIT ADMINISTRATION ET AL.

[No. 92, September Term, 1975.]

*Decided April 9, 1976.*

400

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ▌O'DONNELL, JJ.

*Michael L. Schwartz*, with whom were *David Freishtat* and *Arnold Levi* on the brief, for appellants.

*Glenn E. Bushel, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *J. Michael McWilliams, Assistant Attorney General, Joseph S. Kaufman* and *Patrick A. O'Doherty* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether appellee, Mass Transit Administration (MTA), is required by the interplay between Maryland Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.) Art. 48A, §§ 538-546 inclusive and Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.) Art. 66½, § 7-101 to maintain "no fault" insurance for its passengers providing medical, hospital and disability benefits. We conclude, as did the Court of Special Appeals in *Harden v. Mass Transit Adm.*, 27 Md. App. 590, 342 A. 2d 310 (1975), and the trial judge (Grady, J.), that it is not.

Appellants, Joseph Harden *et al.* (Harden), suing "in their own behalf and on behalf of all other persons similarly situated who have sustained personal injuries resulting in

medical expenses and/loss of income while passengers on buses owned and operated by [MTA]," brought a declaratory judgment action in the Superior Court of Baltimore City. MTA and its insurer, Transit Casualty Company (Transit Casualty), also an appellee here, were named parties defendant.

The petition for declaratory relief was filed March 22, 1974. It alleged: MTA is an agency of the Maryland Department of Transportation. It is authorized by statute to own and operate buses to provide rapid transit and bus service to the citizens of the State. It was the owner and operator of the buses here involved. Transit Casualty is its insurer and provided the motor vehicle liability insurance covering MTA's buses. The insurance was issued subsequent to January 1, 1973. Each of the petitioners was injured subsequent to July 1, 1973, while passengers on MTA buses. Each petitioner applied to Transit Casualty "for 'medical benefits' and 'economic loss' benefits resulting from medical expenses and loss of income suffered as a result of injuries received" by them in these accidents. Although "all necessary forms were submitted to [Transit Casualty] with all necessary documentation, . . . [it] has refused to pay the said claims." This failure was said to be in violation of what was then Code (1957, 1972 Repl. Vol., 1973 Cum. Supp.) Art. 48A, § 539 and § 543 (b).[1] The failure of MTA to maintain

---

1. Section 539 then read:

"539. **Basic Required Primary Coverage — Economic Loss**

"No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein . . . . The said benefits . . . shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C-1 of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured (except as provided in § 240C-1 of this article), and pedestrians injured in an accident in which the insured motor vehicle is involved. The minimum medical, hospital and disability benefits shall include up to an amount of $2,500, for payment of all reasonable expenses arising from the accident and incurred within three years from the

this insurance was said to be in violation of what was then Code (1957, 1970 Repl. Vol., 1973 Cum. Supp.) Art. 66½, § 7-101.[2] It was the position of MTA and Transit Casualty that MTA was "not controlled by or rendered liable to the provisions of the [aforementioned statute] and that [Transit Casualty was] not controlled by or rendered liable to the provisions of the [aforementioned statute]." The petition sought (1) a declaratory judgment that MTA and Transit Casualty were in violation of the previously mentioned statutes, (2) "[t]hat judgment be entered against [them] on

---

date thereof for necessary medical, surgical, x-ray and dental services, including prosthetic ·devices, and necessary ambulance, hospital, professional nursing and funeral services; and in the case of an income producer, payment of benefits for loss of income as the result of the accident; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income."

Minor changes, not affecting the outcome of this case, were made by Chapter 471 of the Acts of 1974. The provisions of § 240C-1, referred to in § 539, have no significance in this litigation.

Section 543 concerned duplication of benefits and coordination of policies. By § 543 (b) the benefits were to be payable by the insurer of the motor vehicle in any accident in which a person was injured while occupying a motor vehicle for which the coverage required by § 539 was in effect. Amendments to § 543 (b) made by Chapter 471 of the Acts of 1974 and Chapter 221 of the Acts of 1975 are not significant in this litigation.

2. At that time this section read in pertinent part:

"(a) Every owner of a motor vehicle required to be registered in this State shall maintain the security required by this section with respect to each such motor vehicle owned by him throughout the period the registration is in effect. . . .

"(b) . . .

"(c) The security required under this section shall be a motor vehicle liability insurance policy written by an insurer authorized to write such a policy in Maryland . . . providing for at least (i) . . .; (ii) . . ., and (iii) the benefits required under Article 48A, §§ 539, 540 and 542 of this Code; provided, however, that the Administrator may approve and accept another form of security in lieu of a motor vehicle liability insurance policy if he finds that such other form of security is adequate to provide and does in fact provide the benefits required by this section."

The amendment made by Chapter 562 of the Acts of 1975 is not significant in this litigation.

behalf of the Plaintiffs, individually and on behalf of all others similarly situated in the amount of Five Million Dollars ($5,000,000.00)," (3) that the plaintiffs "be allowed their costs and expenses including reasonable attorneys' fees," and (4) that they "be allowed interest at the rate of $1^1/_2\%$ per month accounting from a period of thirty days after satisfactory proof of claim had been made to [Transit Casualty]." The petition did not allege that under the interpretation of the statute by MTA the statute was unconstitutional. Such a contention was made, however, before the trial judge.[3]

The demurrer filed by MTA and Transit Casualty was treated by the trial judge as a motion for summary judgment pursuant to the holding in *Hunt v. Montgomery County*, 248 Md. 403, 411, 237 A. 2d 35 (1968).

The declaratory judgment held that MTA and Transit Casualty were not in violation of the provisions of Code (1957, 1972 Repl. Vol., 1973 Cum. Supp.) Art. 48A, §§ 538-546

---

**3.** At argument before us counsel appeared unaware of the provision of Code (1974) § 3-405 (c) Courts and Judicial Proceedings Article, which states:

"(c) *Role of Attorney General.* — If the statute, . . . is alleged to be unconstitutional, the Attorney General need not be made a party but, immediately after suit has been filed, shall be served with a copy of the proceedings by certified mail. He is entitled to be heard, submit his views in writing within a time deemed reasonable by the court, or seek intervention pursuant to the Maryland Rules."

If a copy of the proceedings was served upon the Attorney General that fact does not appear in the record. It is true that the appearance of the Attorney General is entered here. However, this is by reason of representation of the Department of Transportation, of which MTA is a part, by one branch of the Attorney General's office. In the trial court the first appearance entered on behalf of the defendant was that of a private attorney who may have represented Transit Casualty and who filed an answer on behalf of both defendants to the petition for declaratory judgment. Subsequently the appearance of MTA's general counsel, who is not an Assistant Attorney General, was entered on behalf of MTA. The appearance of the Attorney General was not entered in the trial court. Better practice would have been to serve a copy of the proceeding on the Attorney General if a contention of unconstitutionality was to be made.

The revisors of the Code have departed from the language of Code (1957) Art. 31A, the Uniform Declaratory Judgment Act. In it § 11 requires that "if the statute . . . is alleged to be unconstitutional the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard."

"by their failure to provide 'medical benefits' and 'economic loss' benefits pursuant to [that] statute," that MTA, as "an instrumentality and agency of the State of Maryland, is not covered by the provisions of Art. 48A, Sections 538-546, and [Code (1957, 1970 Repl. Vol., 1973 Cum. Supp.) Art.] 66½, Section 7-101," and that "consequently, the Defendant, Transit Casualty . . . , as the carrier of insurance on [MTA] vehicles, is also not covered thereunder . . . ."

Harden contends here, as was done in the Court of Special Appeals, that (1) the statutory language of Art. 48A, §§ 538-546 and Art. 66½, § 7-101 is plain and unambiguous, (2) that it was the legislative intent to include MTA within the purview of the statutes, and (3) that to exclude MTA from the coverage of these statutes would be a violation of the equal protection clause of the 14th Amendment to the Constitution of the United States.

## I and II

The first two contentions are interrelated and will be discussed together, as they were in the Court of Special Appeals.

MTA was established as a part of the Department of Transportation by Chapter 253 of the Acts of 1971 which amended Code (1957) Art. 41, § 207D.[4] It is the successor to the Metropolitan Transit Authority. Its authority is derived from Code (1957, 1972 Repl. Vol.) Art. 64B. Under that article it is vested with wide authority in "the Metropolitan Transit District, comprising the territory lying within the boundaries of the City of Baltimore and the counties of Baltimore and Anne Arundel."

---

4. Section 207D provides:

"(d) All references in this Code, other laws, ordinances, resolutions, rules, regulations, directives, legal actions, contracts or other documents to the Metropolitan Transit Authority and Public Transit Administration shall be deemed to mean the Mass Transit Administration or, if such references relate to matters within the jurisdiction of the Maryland Transportation Authority and if such construction be more reasonable, then such references shall be deemed to mean the Maryland Transportation Authority."

Harden places great reliance on the fact that bills have been introduced into the General Assembly to specifically exclude MTA from the coverage of the "no fault" statute, which bills failed of passage. Hence, he draws an inference of legislative intent that the statute should be interpreted as Harden interprets it. This is a weak reed upon which to lean. It could equally be argued that the General Assembly thought it perfectly plain that MTA was not included within the framework of the statute and, therefore, no amendment was necessary. In *Hearst Corp. v. State Dep't of A. & T.*, 269 Md. 625, 645, 308 A. 2d 679 (1973), Judge Singley referred for the Court to *United States v. Price*, 361 U. S. 304, 310-11, 4 L.Ed.2d 334, 80 S. Ct. 326 (1960), where the Court said that nonaction by Congress after an adverse court decision "affords the most dubious foundation for drawing positive inferences." The statement is equally applicable here.

The rules relative to statutory construction have been stated many times by this Court. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and in ascertaining that intent the Court considers the language of an enactment in its natural and ordinary signification. *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 555-56, 325 A. 2d 748 (1974), and *Greenbelt Consumer v. Acme Mkts.*, 272 Md. 222, 226, 322 A. 2d 521 (1974). A corollary to this rule is that if there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. *Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 393-94, 306 A. 2d 534 (1973), and *Maryland Nat'l Bk. v. Comptroller*, 264 Md. 536, 541, 287 A. 2d 291 (1972). A court may not insert or omit words to make a statute express an intention not evidenced in its original form. *Patapsco Trailer v. Eastern Freightways*, 271 Md. 558, 563-64, 318 A. 2d 817 (1974); and *Giant of Maryland v. State's Attorney*, 267 Md. 501, 512, 298 A. 2d 427, *appeal dismissed*, 412 U. S. 915 (1973). The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the

prior law. *Allers v. Tittsworth,* 269 Md. 677, 684, 309 A. 2d 476 (1973). Yet another cardinal rule of statutory construction is that repeals not express will not be found unless demanded by irreconcilability or repugnancy. *City of Baltimore v. Silver,* 263 Md. 439, 456-57, 283 A. 2d 788 (1971), *appeal dismissed,* 409 U. S. 810 (1972); *Bowie v. Wash. Sub. San. Comm'n,* 249 Md. 611, 618, 241 A. 2d 396 (1968); and *Planning Comm. v. Silkor Corp.,* 246 Md. 516, 524, 229 A. 2d 135 (1967).

With that preamble we turn to the opinion of the Court of Special Appeals. We adopt, with minor editing, that portion of the opinion in which Judge Menchine said for the court:

> "In sum, by Article 64B the Legislature made the Administration a State agency and vested it with extremely broad powers, giving it an autonomy qualified solely by supervisory powers granted or reserved to the Department of Transportation or the Maryland Transportation Authority. Such was the status of MTA at the time that §§ 538 through 546 [5] of Article 48A were added to the Code by the passage of Chapter 73 of the Acts of 1972.
>
> "The contention of Harden basically is that the interaction of Article 48A, § 539 with Article 66½, § 7-101 [6] combined to subject MTA and its insurer to an obligation to assure the payment of 'no fault' claims thereby authorized. They argue that the provisions of Article 66½, § 7-101 that every *owner* of a motor vehicle required to be registered in this State shall maintain required security and that every *person* must comply with § 539 of Article 48A, must be interpreted as requiring MTA and its insurer to be bound by their respective obligations.
>
> "MTA and Transit Casualty counter with the alternative contentions: (a) that MTA is a State agency whose sovereign immunity protects it from

---

**5.** Maryland's limited 'no fault' insurance coverage statute.

**6.** See: Footnotes 1 and 2, *supra.*

suit and (b) that the Legislature did not intend MTA to be within the purview of Chapter 73 of the Acts of 1972.

"There is a surface plausibility in Harden's contention but it does not survive careful analysis.

"Harden brushes aside the suggested defense of the State's immunity to suit upon the ground that such immunity was waived by statute in that:

(1) Article 64B, § 8 (a) declares that MTA shall: 'Have perpetual succession, and sue and be sued in its own name and plead and be impleaded' and

(2) Article 64B, § 49 declares that MTA 'shall be liable for its contracts and for its torts . . . in connection with the performance of the duties and functions imposed in this article.'

We do not, however, see this case as one turning upon a question of immunity to suit and do not reach the issue. Instead, we conclude that the provisions of Article 48A, §§ 538 through 546, and Article 66½, §§ 7-101, 7-102 do not apply at all to MTA. Subtitle 1 of Article 66½ furnishes the definitional portion of that article. In § 1-557 'owner' is defined as 'a person having the property in or title to a vehicle.' Section 1-160 defines a 'person' as 'every natural person, firm, copartnership, association, or corporation.'

"The State and State agencies generally are regarded as not included in statutes using such words as 'natural person, firm, copartnership, association, or corporation.' *State v. Rich,* 126 Md. 643, 649, 95 A. 956, 958 (1915); *Mayor and City Council v. Baltimore Gas Co.,* 232 Md. 123, 135, 192 A. 2d 87, 93 (1963).

"We recognize, of course, that the State or its agencies may fall within the purview of such statutes 'where such an intention is manifest.'

*Huffman v. State Roads Commission,* 152 Md. 566, 584, 137 A. 358, 365 (1927). We do not, however, regard the subject case as falling within such an exception.

"The statute by which §§ 538 through 546 were added to Article 48A was of considerable complexity. Incident to purposes to be accomplished by those sections, the statute provided for the specific repeal and reenactment of sections or subsections of Article 26; of Article 48A; of Article 66½ and of Article 81. Yet the statute made no reference to Article 64B. We are persuaded that this circumstance strongly indicates that the statute was not intended to affect that article or to subject MTA or its insurer to the obligations imposed by Article 48A, §§ 538-546 or by Article 66½, §§ 7-101 and 7-102.

"Particularly significant, we think, is the circumstance that the statute did not address itself to Article 64B, § 44 that reads in pertinent part as follows:

'§ 44. **Insurance.**

(a) *Coverage; form; amount.* — The Authority shall self insure or procure and maintain insurance against loss or damage to any of its properties and against liability for injury to persons or property. The Board may also purchase insurance against loss of revenue from any cause whatsoever. *Such insurance coverage shall be in such form and amount as the board may determine, subject to the requirements of any agreement* arising out of issuance of bonds or other obligations by the Authority.[7] (Emphasis added.)'

---

7. Article 64B, § 2. Definitions reads in pertinent part as follows:

"(a) *'Authority'* or *'Administration'* mean the Mass Transit Administration established pursuant to Article 41, § 207D of this Code and any successor entity; (b) *'Board'* or *'Administrator'* mean the Mass Transit Administrator whose office is established by Article 41, § 207D, of this Code."

"It is instantly apparent that the Legislature left to the discretion of MTA the decision (a) whether to carry insurance or to provide self insurance as to its own liability for negligence, and (b) to fix the form and amount of any insurance coverage it might elect to carry, subject only to the requirements of any agreement arising out of the issuance of its bonds.[8]

"The Legislature made two policy declarations in conjunction with its broad grant of power to MTA. By § 1 of Article 64B it was declared that, 'The development of improved and expanded transit facilities . . . is essential for the satisfactory movement of people and goods, the alleviation of present and future traffic congestion, the economic welfare and vitality and the development of the metropolitan area of Baltimore . . . .' By § 12 of that article it was declared that, 'all costs incurred in constructing, acquiring, operating and maintaining the regional transit facilities shall be borne, as far as practicable, by fares charged for the service performed by the transit facilities owned or controlled by [MTA] . . . .'

\* \* \*

"There is no such inconsistency between §§ 538 through 546 of Article 48A on the one hand and the provisions of Article 64B on the other as to make their separate existence so repugnant that they cannot stand together. We decide, accordingly, that passage of Chapter 73 of the Acts of 1972 did not directly nor by implication repeal any section of Article 64B. The granted discretion to MTA as to the form and amount of insurance to be carried by it remains undisturbed by its passage.

---

8. Sections 15 through 24 of Article 64B authorize MTA to issue bonds; to make provision for their repayment; to assure their existence as trust funds; provides legal remedies to holders for the protection thereof; exempt the bonds from taxation and otherwise relate to their issuance, repayment and refunding.

"In the exercise of that discretion MTA initially chose insurance coverage in a form that quite naturally did not provide the benefits such as were required to be incorporated in policies issued to other owners by the subsequent legislation. Passage of that later legislation did not remove or alter that discretion. The insurer, accordingly, is bound only to the contractual undertaking in the form prescribed by MTA in the exercise of its discretion, and is unaffected by the passage of Chapter 73 of the Acts of 1972.

"Harden's suggestion that recognition of the co-existence of the statutory provisions would 'exempt [MTA] from registering vehicles [or] obeying the rules of the road . . .' is without merit. Section 3-402 of Article 66½ does not exempt State vehicles from registration but exemption from the payment of registration fees is provided by § 3-829. MTA specifically is made liable for the negligence of its employees. Article 64B, § 49. A violation of a rule of the road that is the proximate cause of injury is [evidence of] negligence. [*Pyle v. Lee*, 250 Md. 315, 321, 242 A. 2d 498 (1968), and *Larkins v. Baltimore Transit*, 249 Md. 305, 309, 239 A. 2d 566 (1968).]"

Harden has noted that *Mayor and City Council v. Balto. Gas Company*, 232 Md. 123, 192 A. 2d 87 (1963), and *State v. Rich*, 126 Md. 643, 95 A. 956 (1915), cited by the Court of Special Appeals for the proposition that the State and its agencies generally are regarded as not included in statutes using such words as "natural person, firm, co-partnership, association, or corporation," each involved sovereign immunity. From that Harden argues strenuously that because of the waiver of sovereign immunity his point of view should prevail. However, the full quotation from *Huffman v. State Roads Commission*, 152 Md. 566, 584, 137 A. 358, 365 (1927), also cited by the Court of Special Appeals, is that "while the word 'person' does not ordinarily include the state, it may (*Words and Phrases*, First and Second

Series; *Saranac Land & Timber Co. v. Roberts,* 195 N. Y. 303; and *South Carolina v. U.S.,* 199 U. S. 437), where such an intention is manifest." Although many of the cases supporting this principle involve some portion of the sovereign power, the cases are by no means confined to that. For instance, in *United States v. Fox,* 94 U. S. 315, 24 L. Ed. 192 (1877), an individual by his last will and testament had left his estate to the United States, as the Court put it, "for the purpose of assisting to discharge the debt created by the war of the Rebellion." A New York statute provided that a devise of lands might be made "to any person capable by law of holding real estate; but no devise to a corporation sh[ould] be valid unless such corporation be expressly authorized by its charter or by statute to take by devise." The Court said:

> "The term 'person' as here used applies to natural persons, and also to artificial persons, — bodies politic, deriving their existence and powers from legislation, — but cannot be so extended as to include within its meaning the Federal government. It would require an express definition to that effect to give it a sense thus extended. And the term 'corporation' in the statute applies only to such corporations as are created under the laws of the State. It was so held by the Court of Appeals in *White v. Howard,* 46 N. Y. 164, 165, and its construction of the statute is conclusive upon us. A devise to the United States of real property situated in that State is, therefore, void." *Id.* at 321.

*Fox* has been followed by the Supreme Court as recently as *United States v. Burnison,* 339 U. S. 87, 70 S. Ct. 503, 94 L. Ed. 675 (1950). It was cited in *United States v. United Mine Workers,* 330 U. S. 258, 275, 67 S. Ct. 677, 91 L. Ed. 884 (1947), and *United States v. Cooper Corp.,* 312 U. S. 600, 604 n. 5, 61 S. Ct. 742, 85 L. Ed. 1071 (1941). We do not propose by the argument relative to whether or not the State and its agencies are included in such terms as "natural person," etc., to be diverted from the point upon which the Court of Special Appeals rested its opinion, the fact "that the provi-

sions of Article 48A, §§ 538 through 546, and Article 66½, §§ 7-101, 7-102 do not apply at all to MTA." It said it did not reach the issue of sovereign immunity. We conclude that there was no manifest intention demonstrated on the part of the General Assembly to include MTA within the "no fault" insurance provisions and that if it had intended to include MTA within those provisions it would have made a specific provision to that effect.

### III

On the constitutional issue Judge Menchine said for the Court of Special Appeals:

"[Harden's] contention that legislative exclusion of [MTA] and its insurer from the obligations imposed by Article 48A, §§ 538-546 and Article 66½, §§ 7-101 and 7-102 would render such sections unconstitutional as a denial of equal protection of the law also is without merit. In *Allied American Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 150 A. 2d 421 (1959), it was said:

'The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis.' *Id.* at 623.

"The legislative aims in the creation of a transit authority on the one hand and initiation of 'no

414

fault' insurance on the other are not identical. In
the former, the legislation was directed to
supplying adequate public transit facilities to all
members of the public benefiting from such
services. In the latter it was directed to providing
benefits to a more limited segment of the public.
The classes sought to be benefited were in no sense
identical. The Legislature, with reason, could have
concluded that the problems it alleviated in the
area of public transit would re-emerge if [MTA]
was included in the 'no fault' obligations imposed
by the later statute.

"In *Allied American Co.*, *supra*, it also was said:

'If the classification made by the Legislature
is otherwise justified, there can be no sound
complaint that the legislative purpose might be
better or more fully achieved by other or more
expansive and inclusive classification.' *Id.* at
624.

Moreover, we note in passing that § 542 of Article
48A provides that, 'Nothing in this subtitle shall be
deemed to affect the right of any person to claim
and sue for damages or losses sustained by him as
the result of a motor vehicle accident.' "

We adopt that opinion.

*Judgment of the Court of Special
Appeals affirmed; appellants to
pay the costs.*