POLICE COMMISSIONER OF BALTIMORE CITY *v.*
LESLIE P. DOWLING

[No. 41, September Term, 1977.]

*Decided November 4, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Millard S. Rubenstein, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Herbert R. Weiner,* with whom were *Gomborov, Steinberg, Schlachman & Diener* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the "Law-Enforcement Officers' Bill of Rights" found in Maryland Code (1957, 1976 Repl. Vol., 1976 Cum. Supp.) Art. 27, §§ 727 to 734A does not prevent the Police Commissioner of Baltimore City (the Commissioner) from dismissing an officer notwithstanding a recommendation for a lesser punishment by a hearing board, the Commissioner having made use of the powers vested in him under Code of Public Local Laws of Baltimore City (1969) §§ 16-1 to -40.

Appellee, Leslie P. Dowling (Dowling), takes no issue in this Court with the finding which was made by a Baltimore City Police Department hearing board (the board) that he had made false statements and misrepresented facts when he convinced a member of that department, contrary to the actual fact, that he was engaged in undercover work for the department. His defense was that he was joking, a defense which failed to convince the board. It recommended that he serve 80 hours of extra duty without pay. Appellant, the Commissioner, disapproved the recommendations of the board and directed that Dowling's employment be terminated.

Dowling appealed to the Baltimore City Court. There a trial judge "concluded ... that the Law-Enforcement Officers' Bill of Rights permits only a direct judicial review of the actions of the hearing board but does not permit the Police Commissioner of the Baltimore City Police Department to increase the penalty imposed by that board." Accordingly, he reversed and directed reinstatement of "the action of the Department Trial Board of August 22, 1975 . . . ."

Article 27, § 727 (b) includes within its definition of a "law-enforcement officer" a member of the Baltimore City Police Department. "Hearing Board" is defined by § 727 (c) as:

> "[A] board which is authorized by the chief [of police] to hold a hearing on a complaint against a law-enforcement officer and which consists of not less than three members, all to be appointed by the chief and selected from law-enforcement officers within that agency, or law-enforcement officers of another agency with the approval of the chief of the other agency, and who have had no part in the investigation or interrogation of the law-enforcement officer. At least one member of the hearing board shall be of the same rank as the law-enforcement officer against whom the complaint has been filed."

Section 728 (b) is concerned with the procedures to be followed relative to investigation of a law-enforcement officer. Under § 730 (a) an officer is to be notified "that he is entitled to a hearing on the issues by a hearing board" if, as a result of investigation or interrogation, a recommendation "such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure" is contemplated. An exception to this is made "in the case of summary punishment or emergency suspension as allowed by § 734A . . . ." The remaining subsections of § 730 deal with the mechanics of such a hearing.

The portion of the statute which it is said precludes the action of the Commissioner here is § 731 stating:

> "Any decision, order or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case. A copy of the decision or order and accompanying findings and conclusions, along with written recommendations for action, shall be delivered or mailed promptly to the law-enforcement officer or to his attorney or representative of record."

Section 732 provides that "[a]ppeal[s] from decisions rendered in accordance with §§ 730 and 731 sh[ould] be taken pursuant to Maryland Rule B2."

The Commissioner is appointed by the Governor of Maryland. Such has been the case for many years.[1] The statutes providing the power and authority of the Commissioner and regulating the conduct of the Police Department of Baltimore City are enactments of the General Assembly of Maryland, just as the Law-Enforcement Officers' Bill of Rights is such an enactment. The laws relative to the Police Department of Baltimore City were extensively revised by Chapter 203 of the Acts of 1966, being then codified as Charter and Public Local Laws of Baltimore City (1949 ed.), (Article 4 of the Code of Public Local Laws of Maryland (1930 ed.)) where they appear as §§ 526-542, now Code of Public Local Laws of Baltimore City (1969) §§ 16-1 through -40. The powers of the Commissioner generally are found in § 16-7. Under § 16-7 (7) he has the power to "discharge all members of the Department in the manner prescribed by law." This "manner" is found in § 16-11, providing for disciplinary

---

1. Chapter 920 of the Acts of 1976 provides for the appointment of the Commissioner by the Mayor of Baltimore City with the first term to begin on July 1, 1978. It specifically provides that it "does not alter or affect the term of the incumbent in the office of Police Commissioner of Baltimore City on the effective date of th[at] Act," which was July 1, 1976. No change was made in the provisions as to the powers of the Commissioner.

proceedings, which states, among other things, that "[n]o member of the Department may be . . . dismissed or removed except after written charges have been preferred, reasonable notice provided, and full opportunity afforded to be heard in his own defense, either before the Commissioner, or before a Disciplinary Board which may be created by him, consisting of such members of the Department as he may from time to time determine." The statutory requirements relative to the conduct of hearings concerning a police officer in Baltimore City are similar to those provided in the Law-Enforcement Officers' Bill of Rights. Subsections (c) and (d) of § 16-11 are here relevant:

"(c) *Punishment.* The Commissioner, or Disciplinary Board, shall be empowered, after such disciplinary hearings, to impose such punishment as shall be deemed appropriate under the circumstances, including, but not limited to, dismissal or removal from the Department, fine or forfeiture of pay or leave time, reduction in rank, grade, or position, assignment of extra duty, or any other punishment deemed proper by the Commissioner or the Board.

"(d) *Review.* The Commissioner shall be empowered to review the findings and conclusions of the Disciplinary Board in connection with any disciplinary hearing held before it and he may, in his discretion, affirm, reverse, or otherwise modify the action taken by the Disciplinary Board."

The trial judge noted that Art. 27, § 732 provides that an "[a]ppeal from decisions rendered in accordance with Sections 730 and 731 shall be taken pursuant to Maryland Rule B2" and then said:

"Section 730 deals exclusively with the proceedings before the hearing board. Section 731 . . . requires the findings and recommendations 'of the hearing' to be delivered to the law enforcement officer or his attorney. No mention is made in either Section 730 or 731 of the police commissioner or of any further

administrative review following the hearing board proceedings. In the total context of Sections 730 through 732, the use of the word 'recommendations' can be reasonably meant to contemplate the possibility of an appeal by the law enforcement officer, the person to whom the recommendations are sent; but if no appeal is forthcoming, the 'recommendations' will become operative.

"If the Legislature meant that the 'recommendations' were to be reviewed by the department head, it could easily have said so. Indeed, in the 1976 session of the General Assembly, a bill was introduced (H.B. No. 1564) to amend Sec. 731 to expressly provide for review of the hearing board decision by the police chief. This bill did not pass. The Commissioner now attempts to read himself into Section 731, but he cannot do what the Legislature failed to do for him."

Dowling's bases for contending that the Commissioner is without authority to review the actions of a departmental trial board are: (1) the reasoning of the trial judge; (2) that there is an inconsistency between the Law-Enforcement Officers' Bill of Rights and § 16-11, and therefore § 16-11 stands repealed because the Law-Enforcement Officers' Bill of Rights was enacted by Chapter 722 of the Acts of 1974 and § 2 of that act provides, "That all laws or parts of laws, public general or public local, inconsistent with th[at] Act, are repealed to the extent of the inconsistency"; and (3) because Art. 27 "preempts by occupation the entire field of police discipline . . . ."

The last argument relies on such cases dealing with preemption as *County Council v. Montgomery Ass'n*, 274 Md. 52, 333 A. 2d 596 (1975), and *City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A. 2d 376 (1969). What this argument overlooks is that the statutes here in question were both passed by the General Assembly. The preemption doctrine is concerned with enactments by or for political subdivisions on the one hand and public general laws on the other. *See McCarthy v. Bd. of Education of A. A. Co.*, 280

Md. 634, 638, 374 A. 2d 1135 (1977). The statute granting the power to the Commissioner here being a public general law, the preemption argument is without merit.

Points one and two are intertwined since there can be no repeal as suggested under the second point unless an inconsistency between the two statutes is found. Accordingly, we shall consider them together.

There is no shortage of holdings of this Court relative to statutory construction. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. *Comptroller v. Mandel Re-Election Com.*, 280 Md. 575, 578-79, 374 A. 2d 1130 (1977); *Harden v. Mass Transit Adm.*, 277 Md. 399, 406, 354 A. 2d 817 (1976); *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 555-56, 325 A. 2d 748 (1974); *Greenbelt Consumer v. Acme Mkts.*, 272 Md. 222, 226, 322 A. 2d 521 (1974); and *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974). A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. *Harden*, 277 Md. at 406; *Radio Com.*, 271 Md. at 93; *Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 393-94, 306 A. 2d 534 (1973); and *Maryland Nat'l Bk. v. Comptroller*, 264 Md. 536, 541, 287 A. 2d 291 (1972). Where two statutes deal with the same subject matter as here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each. *Comm'n on Med. Discipline v. Bendler*, 280 Md. 326, 330, 373 A. 2d 1232 (1977); *Dep't of Nat. Resources v. France*, 277 Md. 432, 460-61, 357 A. 2d 78 (1976); and *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 155, 297 A. 2d 721 (1972). This is true notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other, because in that case the rule is that statutes must be harmonized to the extent possible. *Bendler*, 280 Md. at 330; *City of Baltimore v. Clerk*, 270 Md. 316, 319-20, 311 A. 2d 261 (1973); *Bd. of Fire Comm'rs v. Potter*,

268 Md. 285, 294, 300 A. 2d 680 (1973); and *May v. Warnick,* 227 Md. 77, 83, 175 A. 2d 413 (1961). This principle of statutory construction operates because the law does not favor repeal by implication. *Bendler,* 280 Md. at 330; *France,* 277 Md. at 460, and *Waye v. State,* 231 Md. 510, 516, 191 A. 2d 428 (1963). Put in slightly different words, "Yet another cardinal rule of statutory construction is that repeals not express will not be found unless demanded by irreconcilability or repugnancy," *Harden,* 277 Md. at 407, citing *City of Baltimore v. Silver,* 263 Md. 439, 456-57, 283 A. 2d 788 (1971), *appeal dismissed,* 409 U. S. 810 (1972); *Bowie v. Wash. Sub. San. Comm'n,* 249 Md. 611, 618, 241 A. 2d 396 (1968), and *Planning Comm. v. Silkor Corp.,* 246 Md. 516, 524, 229 A. 2d 135 (1967). "Unless the intention of the legislature is clearly otherwise, 'the requirements of one will be construed as embodying the provisions of the other.' " *Bendler,* 280 Md. at 330, quoting *City of Baltimore v. Clerk,* 270 Md. at 319. A court may not insert or omit words to make a statute. express an intention not evidenced in its original form. *Harden,* 277 Md. at 406; *Patapsco Trailer v. Eastern Freight.,* 271 Md. 558, 563-64, 318 A. 2d 817 (1974), and *Giant of Md. v. State's Attorney,* 267 Md. 501, 512, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973). The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. *Harden,* 277 Md. at 407; and *Allers v. Tittsworth,* 269 Md. 677, 684, 309 A. 2d 476 (1973). Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory, *Prince George's Co. v. White,* 275 Md. 314, 319, 340 A. 2d 236 (1975); *St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 142, 339 A. 2d 291 (1975); *A. H. Smith Sand and Gravel v. Dep't,* 270 Md. 652, 659, 313 A. 2d 820 (1974); *Baltimore City v. United Stores,* 250 Md. 361, 368-69, 243 A. 2d 521 (1968); and *Thomas v. Police Commissioner,* 211 Md. 357, 361, 127 A. 2d 625 (1956). In

*Williams and Fulwood v. Director*, 276 Md. 272, 347 A. 2d 179 (1975), the Court observed:

> "We have said that where a statute is subject to two constructions, one of which will result in the legality and effectiveness of the statutory provision being construed and the other of which will make it illegal and nugatory, courts will prefer the construction which will result in its legality and effectiveness. *District Land v. Wash. S.S.C.*, 266 Md. 301, 312, 292 A. 2d 695 (1972). We also have held that a statute will be construed so as to avoid a conflict with the Constitution whenever that course is reasonably possible. *Deems v. Western Md. Ry.*, 247 Md. 95, 113, 231 A. 2d 514 (1967). This reasoning would be equally applicable to a rule or order of court. *Cf. Acting Dir., Dep't of F. & P. v. Walker*, 271 Md. 711, 719, 720, 319 A. 2d 806 (1974), relative to the interpretation to be placed upon acts of state officials." *Id.* at 295.

The attempt by Dowling to draw an inference favorable to his construction from the failure of the General Assembly in 1976 to enact a statute providing for review of a hearing board decision by a police chief was answered in *Harden* where we said:

> "Harden places great reliance on the fact that bills have been introduced into the General Assembly to specifically exclude MTA from the coverage of the 'no fault' statute, which bills failed of passage. Hence, he draws an inference of legislative intent that the statute should be interpreted as Harden interprets it. This is a weak reed upon which to lean. It could equally be argued that the General Assembly thought it perfectly plain that MTA was not included within the framework of the statute and, therefore, no amendment was necessary. In *Hearst Corp. v. State Dep't of A. & T.*, 269 Md. 625, 645, 308 A. 2d 679 (1973), Judge Singley referred for the Court to

*United States v. Price,* 361 U. S. 304, 310-11, 4
L.Ed.2d 334, 80 S. Ct. 326 (1960), where the Court
said that nonaction by Congress after an adverse
court decision 'affords the most dubious foundation
for drawing positive inferences.' " 277 Md. at 406.

The General Assembly might well have regarded the 1976
proposal as completely unnecessary, being of the view that it
was explicitly provided in the case of Baltimore City that the
Commissioner would review any recommendation of a
hearing board and determine whether it should be
implemented. It further could have been of the view that
such was the implicit intent of the Law-Enforcement
Officers' Bill of Rights in the absence of a statute such as
that in Baltimore City.

The fact that § 732 relative to appeal refers to "decisions
rendered in accordance with §§ 730 and 731" and that § 730
is concerned only with hearings before a hearing board does
not in our view compel a finding of inconsistency between
the Law-Enforcement Officers' Bill of Rights and the statute
relative to Baltimore City. It does not require an
interpretation that there could be no appeal from a decision
made after a hearing under § 730 unless recommendations
under § 731 are binding. This is so because an appeal from
an action of the Commissioner might well be based upon a
contention that the evidence adduced before a hearing board
under § 730 did not support the findings of fact by such a
board and thus that there was no proper factual predicate
for the Commissioner's action.

Dowling's argument that the "written recommendations
for action" mentioned in § 731 are binding and must be
implemented would have us hold contrary to the ordinary,
accepted meaning of the word "recommendation." For
instance, *The Oxford English Dictionary* (Compact ed. 1971)
2443 defines "recommendation" as:

"1. . . .

\* \* \*

"4. The action of recommending a person or thing
as worthy or desirable."

The relevant definition of "recommend" appearing on the same page is:

"1. . . .

* * *

"7. To counsel, advise. **a.** Const. *to* a person, with *it* as obj. . . ." (Italics in original.)

*Webster's New International Dictionary* (2d ed. 1957) says of "recommendation":

"1. Act of recommending. 2. State of being recommended; esteem . . . . 3. Something which recommends or commends; as, his only *recommendation* is his personality; specif., a statement, letter, or the like, declaring what one recommends or expressing commendation; as, the mayor would make no *recommendations;* a candidate supplied with *recommendations.* 4. A thing, course of procedure, or the like, recommended." *Id.* at 2080. (Italics in original.)

The same work contains the following definition of "recommend":

"*Transitive:* 1. . . .

"2. To praise; now specif., to make a commendatory statement concerning (a person or thing); as, his professors will not *recommend* him; physicians *recommend* it.

"3. To commend, or bring forward explicitly, as meriting consideration, acceptance, adoption, election, or the like; to present as one's advice; one's choice or as having one's approval or support; to offer or suggest with favoring representations; as, to *recommend* a newcomer to one's friends, a defendant to the mercy of the court, the appointment of Brown to the postmastership.

"4. To make acceptable; to attract favor to; as, his manners *recommended* him.

"**5.** To advise; counsel. 'He *recommended* that the whole disposition of the camp should be changed.' *W. Irving.* —, *Intransitive:* To make a recommendation." *Id.* at 2080. (Italics in original.)

Dowling in his brief and again at oral argument suggested that a hearing board's decision "m[ight] be construed as a recommendation to the Circuit Court . . . ." A reading of the statute which would have the courts implement a recommendation would run afoul of our holding in *Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 334 A. 2d 514 (1975), relative to separation of powers. As we have already observed, if it is possible to construe a statute either so that it is constitutional or so that it is unconstitutional, the constitutional construction must be followed.

We are of the view that the two statutes may be construed and harmonized together. Under such a holding the hearing board would meet and hold its hearings under § 730. Under § 731 it would make findings of fact in a concise statement upon each issue in the case. Its findings and recommendations would then be transmitted to the Commissioner for his ultimate decision, just as a master makes findings and recommendations to a chancellor. *See, e.g.,* E. Miller, *Equity Procedure* §§ 555-56 (1897); *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677 (1973); and *Bris Realty v. Phoenix,* 238 Md. 84, 89, 208 A. 2d 68 (1965). *Cf. Foote v. Harrington,* 129 Md. 123, 98 A. 289 (1916). A copy of its findings and recommendations would be delivered or mailed to the officer in question, his attorney, or other representative. The reason for this is in order that they might take due notice thereof and govern themselves accordingly relative to any further presentation to the Commissioner. Of course, the Commissioner would notify the law-enforcement officer involved of his ultimate decision. It is from this decision that the appeal would lie. The time for appeal would be so computed. Our holding here is in no way inconsistent with that of the Court of Special Appeals in *Abbott v. Administrative Hearing Bd.,* 33 Md. App. 681, 366 A. 2d 756 (1976), relied upon by Dowling and

the trial court. As a matter of fact, in that case the Court of Special Appeals noted:

> "On October 24, 1974, the Chief of Police notified Sergeant Abbott that he concurred in the hearing board's findings and that the recommended disciplinary action would become effective on October 25, 1974. Sergeant Abbott was also notified of his right to appeal from this action to the Circuit Court for Prince George's County within thirty days." *Id.* at 684.

The argument there concerned whether the appeal of the officer was to be first to a county personnel board under provisions of the county charter and then to the circuit court or directly to the circuit court. The Court of Special Appeals held the county charter provision in conflict with the public general law (the Law-Enforcement Officers' Bill of Rights) and that the appeal must be directly to the circuit court.

> *Order reversed; appellee to pay the costs.*