JOSEPH HARDEN ET AL. *v.* MASS TRANSIT ADMINISTRATION ET AL.

[No. 884, September Term, 1974.]

*Decided July 25, 1975.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*Michael L. Schwartz,* with whom were *David Freishtat* and *Arnold Levi* on the brief, for appellants.

*Glenn E. Bushel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, J. Michael McWilliams, Assistant Attorney General, Joseph S. Kaufman* and *Patrick A. O'Doherty* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

Joseph Harden, Lula Mae Rudd, John Fleming and Carolyn Gaylord, for themselves and for all others similarly situated (appellants), sought, in the Superior Court of Baltimore City, declaratory relief that Mass Transit Administration, a body politic and corporate, and Transit Casualty Company, a body corporate, its insurer (appellees), are responsible to them for medical, hospital and disability benefits pursuant to the provisions of Article 48A, §§ 538-546 of the Annotated Code of Maryland (1974 Cum. Supp.). Their petition alleged that Mass Transit Administration was the owner and operator of certain busses in which the named plaintiffs were riding as passengers when they sustained injuries subsequent to January 1, 1973 that involved medical expenses and loss of income, and that Transit Casualty Company was its insurer under a policy of insurance issued after January 1, 1973. Liability of Mass Transit Administration (Administration) was asserted on the basis of its alleged failure to maintain motor vehicle liability insurance as required by Article 66½, § 7-101 of the Annotated Code of Maryland (1974 Cum. Supp.).[1] Liability of Transit Casualty Company was asserted

---

1. Section 7-101 reads as follows:

"(a) Every owner of a motor vehicle required to be registered in this State shall maintain the security required by this section with respect to each such motor vehicle owned by him throughout the period the registration is in effect. No certificate of registration shall be issued or transferred to an owner by the Administrator unless the owner or prospective owner produces satisfactory evidence that such security is in effect.

"(b) Every person who has been excluded from coverage under a motor vehicle liability insurance policy under § 240C-1 of Article 48A and every person who has been finally rejected for insurance by the Maryland Automobile Insurance Fund under § 243D of Article 48A shall, within ten days after rejection by the said fund, as the case may be, furnish evidence to the Administrator that he obtained and is covered by the security required by this section. Upon failure to furnish such evidence within said period, the Administrator shall suspend any certificate of registration for every vehicle owned by said person, and shall also suspend any operator's license issued to such person until such time as the person furnishes evidence that he has obtained and is covered by the required security.

"(c) The security required under this section shall be a motor vehicle liability insurance policy written by an insurer authorized

on the basis of its alleged failure to incorporate within the terms of its issued liability insurance policy an undertaking to afford the minimum medical, hospital and disability benefits required by Article 48A, § 539.[2] Mass Transit

to write such a policy in Maryland (including the Maryland Automobile Insurance Fund) providing for at least (i) the payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and of up to $40,000 for any two or more persons, exclusive of interest and costs; (ii) the payment of claims for property of others damaged or destroyed in an accident of up to $5,000, exclusive of interest and costs, and *(iii) the benefits required under Article 48A, §§ 539, 540 and 542 of this Code;* provided, however, that the Administrative may approve and accept another form of security in lieu of a motor vehicle liability insurance policy if he finds that such other form of security is adequate to provide and does in fact provide the benefits required by this section." (Italics supplied)

**2.** Section 539 reads as follows:

"No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein; or unless equivalent medical, hospital, and disability benefits are provided by a policy issued to the insured by a nonprofit health service plan or by an authorized insurer with the policy in each case subject to approval by the Commissioner. The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C-1 of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured (except as provided in § 240C-1 of this article), and pedestrians injured in an accident in which the insured motor vehicle is involved or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved. The minimum medical, hospital and disability benefits shall include up to an amount of $2,500, for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services; and in the case of an income producer, payment of benefits for loss of income as the result of the accident; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income.

Administration and Transit Casualty Company severally filed a demurrer and answer. The trial judge, at the request of appellees, treated the demurrer as a motion for summary judgment, relying upon *Hunt v. Montgomery County*, 248 Md. 403, 237 A. 2d 35.

On October 31, 1974 the following declaratory judgment was passed in the Superior Court of Baltimore City:

"* * * It is hereby

ORDERED, DECLARED, ADJUDGED AND DECREED that the Defendants are not in violation of the provisions of Article 48A, Sections 538-546 of the Annotated Code of Maryland (1974 Cum. Supp.) by their failure to provide 'medical benefits' and 'economic loss' benefits pursuant to said statute,

AND, IT IS FURTHER ORDERED, DE-CLARED, ADJUDGED AND DECREED that the Defendant, Mass Transit Administration, an instrumentality and agency of the State of Maryland, is not covered by the provisions of Article 48A, Sections 538-3 [sic] and $66^{1}/_{2}$, Section 7-101.2 [sic] of the Annotated Code of Maryland (1973 Cum. Supp.), and consequently the Defendant, Transit Casualty Company, as the carrier of insurance on Mass Transit Administration vehicles is also not covered thereunder, * * *" [3]

Appellants contend:

I. that the statutory language of Article 48A, §§ 538-546 and Article $66^{1}/_{2}$, § 7-101 is plain and unambiguous;

II. that it was the legislative intent to bind Mass Transit Administration and its insurer to the compulsions thereby imposed, and

---

3. The code references set forth in the last quoted paragraph of the declaration apparently were intended to refer to Article 48A, §§ 538-546 and Article $66^{1}/_{2}$, §§ 7-101 and 7-102.

III. that under any other interpretation, the cited sections of the code would be unconstitutional.

## I. and II.

Contentions I and II are interrelated and will be discussed together.

The Mass Transit Authority was established by Chapter 253 of the Acts of 1971, amending Article 41, § 207D.[4] It

---

4. Article 41, § 207D, as thus amended, reads as follows:

"(a) The Mass Transit Administration is hereby established as part of the Department of Transportation. The head of the Mass Transit Administration shall be the Mass Transit Administrator. The incumbent general manager of the Metropolitan Transit Authority as of June 30, 1971, shall be the Mass Transit Administrator and shall serve at the pleasure of the Secretary of Transportation. Thereafter, his successors shall be appointed by the Secretary of Transportation, with the approval of the Governor, and shall serve at the pleasure of the Secretary. The Mass Transit Administrator shall receive such salary as provided in the State budget. The Mass Transit Administrator shall report directly to the Secretary of Transportation and shall, subject to the authority of the Secretary of Transportation, be responsible for carrying out the powers, duties, responsibilities and functions vested by law in the Mass Transit Administration. The Mass Transit Administrator shall also be responsible for carrying out those duties or functions vested in the Secretary of Transportation which the Secretary may delegate to him.

"(b) The Metropolitan Transit Authority, the office of secretary of the Metropolitan Transit Authority, the office of treasurer of the Metropolitan Transit Authority, and the office of general manager of the Metropolitan Transit Authority, are hereby abolished. From and after July 1, 1971, all rights, powers, duties, obligations and functions heretofore conferred upon or exercised by the Metropolitan Transit Authority and such abovenamed officers, shall be transferred to and shall, subject to the authority of the Secretary of Transportation, be exercised by the Mass Transit Administration except for those powers and duties transferred to the Maryland Transportation Authority by § 208C of this article.

"(c) All rules, regulations, forms, orders and directives promulgated by or in effect for the Metropolitan Transit Authority as of June 30, 1971, shall continue in force unless and until changed by the Mass Transit Administrator or the Secretary of Transportation.

"(d) All references in this Code, other laws, ordinances, resolutions, rules, regulations, directives, legal actions, contracts or other documents to the Metropolitan Transit Authority and Public Transit Administration shall be deemed to mean the Mass Transit Administration or, if such references relate to matters within the jurisdiction of the Maryland Transportation Authority

succeeded "Public Transit Administration" and the "Metropolitan Transit Authority" as the same had previously existed. The creating statute provided that all references in the code, laws, ordinances, resolutions, rules and regulations to the Metropolitan Transit Authority or to Public Transit Administration shall be deemed to mean the Mass Transit Administration, except to the extent that such references more reasonably should be construed to mean the Maryland Transportation Authority.[5]

The legislative grant of power and authority and the concomitant duty and obligation of the Mass Transit Authority was supplied by Article 64B of the Annotated Code of Maryland.[6] Section 4 of the Article provides, *inter alia*, that:

and if such construction be more reasonable, then such references shall be deemed to mean the Maryland Transportation Authority.

"(e) All persons who are as of June 30, 1971, officers and employees of the Metropolitan Transit Authority, but not including members of the Metropolitan Transit Authority and its secretary and its treasurer, are hereby confirmed in the office, position and classification which they hold as of June 30, 1971, as officers and employees of the Mass Transit Administration until they retire, resign, or are removed as provided by law."

5. The Maryland Transportation Authority is that agency of the State to which is committed the financing, operation, maintenance, and repair of all toll facilities under Article 41, § 208C, as amended by Chapter 665 of the Acts of 1974.

6. Section 1 declared the legislative policy and reads as follows:

"The development of improved and expanded transit facilities, consisting of rapid transit and bus service operating as a unified and coordinated regional transit system, is essential for the satisfactory movement of people and goods, the alleviation of present and future traffic congestion, the economic welfare and vitality and the development of the metropolitan area of Baltimore, comprising Baltimore City, Baltimore County and Anne Arundel County. Such a regional transit system cannot be achieved by the unilateral action of any one of Baltimore City, Baltimore County and Anne Arundel County but requires action by the State of Maryland, through a State authority which is politically responsive to local needs and which will assure that the development of the regional transit system fosters general development plans for the State, the region and the local development plans of the participating political subdivisions. Adequate provisions should be made for the protection of transit labor in the development and operation of the regional system. Adequate provision should be made for assuring that in the event allocation of State financial resources for the benefit of this regional system are made, it shall be accompanied by a parity

"* * * the Administration shall have the powers and duties granted in this article, as amended from time to time, and such additional powers as may hereafter lawfully be conferred upon it pursuant to law, to manage, conduct and control the functions, affairs and property of the Administration.

"The powers, authority and functions vested in the Mass Transit Administration by the provisions of §§ 6, 8 (c) through 8 (n), 18, 23, 29, 31, 34, 35, 36, 37, 44, 45 and 46 of this article, shall be exercised or performed by the Administration subject to the approval of the Secretary of Transportation or, with respect to matters within the jurisdiction of the Maryland Transportation Authority, the approval of the Maryland Transportation Authority * * *."

The sections and subsections referred to in § 4, *supra*, hereafter recited in condensed summary form, provided in substance as follows:

§ 6 authorized appointment and employment of counsel; and provided for a chief administrative officer and fixed his responsibility.

§ 8 authorized the Administration:

(c) to establish offices;

(d) to adopt, amend and repeal rules and regulations;

(e) to acquire property;

(f) to obtain grants, loans and advances;

(g) to contract for transit facilities and services;

(h) to contract with others for joint use of property or rights;

(i) to make agreements for free or reduced fares;

allocation for the benefit of taxpayers supporting transit facilities in the political subdivisions of the Washington Suburban Transit District."

  (j) to provide transit service;

  (k) to engage or remove personnel without regard to Maryland Laws relating to other State employees;

  (l) to establish a personnel merit system and a pension and retirement system with or independent of the existing State system;

  (m) to contract for planning engineering and technical services;

  (n) to provide a security force.

§ 18 authorized the fixing of rates and charges; prescribed the uses to which funds derived therefrom shall be put; and provided that such rates and charges "shall not be subject to supervision or regulation by any department, division, commission, board, bureau, or agency of the State or any political subdivision thereof."[7]

§ 23 authorized the Administration to execute agreements, leases and equipment trust certificates for the purchase of transit facilities or equipment.

§ 29 declared the function of the Department of Transportation but imposed no restrictions upon the functions of the Administration with which the subject case is concerned.

§ 31 related further to fixing rates and charges to provide funds the Administration "deems necessary and desirable to carry out the purposes of this article."

§ 34 related further to contracts, and leases.

§ 35 authorized the Administration to provide

---

7. This section solely excepted action by the Secretary of Transportation and the Maryland Transportation Authority as the only deterrent to the exercise of that broad grant of rate fixing power. There is no suggestion that either of those State agencies had interposed its authority upon the Administration.

transit service if the Public Service Commission "fails or refuses to direct a private carrier to provide [it]."

§ 36 authorized the Administration to acquire the assets and properties of private carriers by purchase, lease or condemnation.

§ 37 related to rights and benefits of employees and to labor contract and disputes.

§ 45 related to purchasing and competitive bidding.

§ 46 authorized acquisitions by condemnation.

In sum, by Article 64B the Legislature made the Administration a State agency and vested it with extremely broad powers, giving it an autonomy qualified solely by supervisory powers granted or reserved to the Department of Transportation or the Maryland Transportation Authority. Such was the status of the Administration at the time that §§ 538 through 546 [8] of Article 48A were added to the Annotated Code of Maryland by the passage of Chapter 73 of the Acts of 1972.

The contention of appellants basically is that the interaction of Article 48A, § 539 with Article 66½, § 7-101 [9] combined to subject the Administration and its insurer to an obligation to assure the payment of "no fault" claims thereby authorized. They argue that the provisions of Article 66½, § 7-101 that every *owner* of a motor vehicle required to be registered in this State shall maintain required security and that every *person* must comply with § 539 of Article 48A, must be interpreted as requiring the Administration and its insurer to be bound by their respective obligations.

Appellees counter with the alternative contentions: (a) that the Administration is a State agency whose sovereign

---

8. Maryland's limited "no fault" insurance coverage statute.

9. See: Footnotes 1 and 2, *supra.*

immunity protects it from suit and (b) that the Legislature did not intend the Administration to be within the purview of Chapter 73 of the Acts of 1972.

There is a surface plausibility in appellants' contention but it does not survive careful analysis.

Appellants brush aside the suggested defense of the State's immunity to suit upon the ground that such immunity was waived by statute in that:

(1) Article 64B, § 8 a declares that the Administration shall: "Have perpetual succession, and sue and be sued in its own name and plead and be impleaded" and

(2) Article 64B, § 49 declares that the Administration "shall be liable for its contracts and for its torts * * * in connection with the performance of the duties and functions imposed in this article."

We do not, however, see this case as one turning upon a question of immunity to suit and do not reach the issue. Instead, we conclude that the provisions of Article 48A, §§ 538 through 546, and Article 66½, §§ 7-101, 7-102 do not apply at all to the Administration. Subtitle 1 of Article 66½ furnishes the definitional portion of that article. In § 1-157 "owner" is defined as "a person having the property in or title to a vehicle." Section 1-160 defines a "person" as "every natural person, firm, copartnership, association, or corporation."

The State and State agencies generally are regarded as not included in statutes using such words as "natural person, firm, copartnership, association, or corporation." *State v. Rich,* 126 Md. 643, 649, 95 A. 956, 958; *Mayor and City Council v. Baltimore Gas Co.,* 232 Md. 123, 135, 192 A. 2d 87, 93.

We recognize, of course, that the State or its agencies may fall within the purview of such statutes "where such an intention is manifest." *Huffman v. State Roads Commission,* 152 Md. 566, 584, 137 A. 358, 365. We do not, however, regard the subject case as falling within such an exception.

The statute by which §§ 538 through 546 were added to Article 48A was of considerable complexity. Incident to purposes to be accomplished by those sections, the statute provided for the specific repeal and reenactment of sections or subsections of Article 26; of Article 48A; of Article 66$^{1}/_2$ and of Article 81. Yet the statute made no reference to Article 64B. We are persuaded that this circumstance strongly indicates that the statute was not intended to affect that article or to subject the Administration or its insurer to the obligations imposed by Article 48A, §§ 538-546 or by Article 66$^{1}/_2$, §§ 7-101 and 7-102.

Particularly significant, we think, is the circumstance that the statute did not address itself to Article 64B, § 44 that reads in pertinent part as follows:

"§ 44. *Insurance*.

(a) *Coverage; form; amount.* — The Authority shall self insure or procure and maintain insurance against loss or damage to any of its properties and against liability for injury to persons or property. The Board may also purchase insurance against loss of revenue from any cause whatsoever. *Such insurance coverage shall be in such form and amount as the board may determine, subject to the requirements of any agreement* arising out of issuance of bonds or other obligations by the Authority.[10] (Emphasis added.)

It is instantly apparent that the Legislature left to the discretion of the Administration the decision (a) whether to carry insurance or to provide self insurance as to its own liability for negligence, and (b) to fix the form and amount of any insurance coverage it might elect to carry, subject

---

10. Article 64B, § 2. Definitions reads in pertinent part as follows:

"(a) *'Authority'* or *'Administration'* mean the Mass Transit Administration established pursuant to Article 41, § 207D of this Code and any successor entity; (b) *'Board'* or *'Administrator'* mean the Mass Transit Administrator whose office is established by Article 41, § 207D, of this Code."

only to the requirements of any agreement arising out of the issuance of its bonds.[11]

The Legislature made two policy declarations in conjunction with its broad grant of power to the Administration. By § 1 of Article 64B it was declared that, "The development of improved and expanded transit facilities * * * is essential for the satisfactory movement of people and goods, the alleviation of present and future traffic congestion, the economic welfare and vitality and the development of the metropolitan area of Baltimore * * *." By § 12 of that article it was declared that, "all costs incurred in constructing, acquiring, operating and maintaining the regional transit facilities shall be borne, as far as practicable, by fares charged for the service performed by the transit facilities owned or controlled by the [Administration] * * *."

Imposition upon the Administration of the additional costs inherent in the provisions of Article 48A, §§ 538 through 546 well might affect adversely its capacity to carry out the legislative policies for which it was created.

In *Bowie v. Wash. Sub. San. Comm.*, 249 Md. 611, 618, 241 A.2d 396, 400, it was said:

> "It is a cardinal rule of statutory construction that repeals not express will not be found unless demanded by irreconcilability or repugnancy."

See also *Loker v. State*, 2 Md. App. 1, 9, 233 A. 2d 342, 348, affirmed 250 Md. 677, 245 A. 2d 814, cert. denied 393 U. S. 1082.

There is no such inconsistency between §§ 538 through 546 of Article 48A on the one hand and the provisions of Article 64B on the other as to make their separate existence so repugnant that they cannot stand together. We decide, accordingly, that passage of Chapter 73 of the Acts of 1972

---

11. Sections 15 through 24 of Article 64B authorize the Administration to issue bonds; to make provision for their repayment; to assure their existence as trust funds; provides legal remedies to holders for the protection thereof; exempt the bonds from taxation and otherwise relate to their issuance, repayment and refunding.

did not directly nor by implication repeal any section of Article 64B. The granted discretion to the Administration as to the form and amount of insurance to be carried by it remains undisturbed by its passage.

In the exercise of that discretion the Administration initially chose insurance coverage in a form that quite naturally did not provide the benefits such as were required to be incorporated in policies issued to other owners by the subsequent legislation. Passage of that later legislation did not remove or alter that discretion. The insurer, accordingly, is bound only to the contractual undertaking in the form prescribed by the Administration in the exercise of its discretion, and is unaffected by the passage of Chapter 73 of the Acts of 1972.

Appellants' suggestion that recognition of the co-existence of the statutory provisions "would exempt [the Administration] from registering vehicles [or] obeying the rules of the road * * *" is without merit. Section 3-402 of Article 66½ does not exempt State vehicles from registration but exemption from the payment of registration fees is provided by § 3-829. The Administration specifically is made liable for the negligence of its employees. Article 64B, § 49. A violation of a rule of the road that is the proximate cause of injury is negligence. *Sun Cab Co. v. Walston,* 15 Md. App. 113, 289 A. 2d 804; affirmed 267 Md. 559, 298 A. 2d 391.

## III.

Appellants' contention that legislative exclusion of the Administration and its insurer from the obligations imposed by Article 48A, §§ 538-546 and Article 66½, §§ 7-101 and 7-102 would render such sections unconstitutional as a denial of equal protection of the law also is without merit. In *Allied American Co. v. Comm'r of Motor Vehicles,* 219 Md. 607, 623, 150 A. 2d 421, 431, it was said:

> "The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be

> regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis."

The legislative aims in the creation of a transit authority on the one hand and initiation of "no fault" insurance on the other are not identical. In the former, the legislation was directed to supplying adequate public transit facilities to all members of the public benefiting from such services. In the latter it was directed to providing benefits to a more limited segment of the public. The classes sought to be benefited were in no sense identical. The Legislature, with reason, could have concluded that the problems it alleviated in the area of public transit would re-emerge if the Authority was included in the "no fault" obligations imposed by the later statute.

In *Allied American Co., supra,* it was said at 624 [432]:

> "If the classification made by the Legislature is otherwise justified, there can be no sound complaint that the legislative purpose might be better or more fully achieved by other or more expansive and inclusive classification."

Moreover, we note in passing that § 542 of Article 48A provides that, "Nothing in this subtitle shall be deemed to affect the right of any person to claim and sue for damages or losses sustained by him as the result of a motor vehicle accident."

Because the briefs and arguments of the named litigants addressed only the substantive merits of the litigation and in view of our decision on the merits, we do not reach the

question whether a class action would be a proper vehicle for resolution of the supposed rights of multiple unnamed members of a class under the circumstances here existing. But see this Court's consolidated cases of *Johnson v. Chrysler Credit Corp.* and *Forcella v. Ford Motor Credit Co.*, Nos. 789 and 790, September Term, 1974, filed May 6, 1975. See also: *Mass Compensatory Relief,* 24 Syracuse L. Rev. 1341, 1356, *et seq.*

> *Declaratory judgment amended so that the code references in its penultimate paragraph shall read: Article 48A, §§ 538-546 and Article 66¹/₂, §§ 7-101 and 7-102 and as so amended, affirmed.*
>
> *Costs to be paid by appellants.*