# BALTIMORE GAS AND ELECTRIC COMPANY
## *v.* BOARD OF COMMISSIONERS
## OF CALVERT COUNTY ET AL.

[No. 11 (Adv.), September Term, 1976.]

*Decided June 1, 1976.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*James A. Biddison, Jr.*, with whom were *Paul W. Davis* and *Larry D. Lamson* on the brief, for appellant.

*Eugene E. Pitrof*, with whom were *J. Frank Boyd* and *Stephen Clagett* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

The question presented for decision in this case is the validity of a county ordinance allowing discounts in the real property tax scaled according to the size of the tax bill, which, it is argued, is violative of the laws and Constitution of this State and the Federal Constitution. The Circuit Court for Calvert County (Bowen, J.) upheld the ordinance and because of the importance of the issues being raised, we granted certiorari prior to consideration by the Court of Special Appeals and advanced the case for argument. We reverse.

So free of dispute are the relevant facts that the parties were able to arrive at a comprehensive stipulation which made it unnecessary to present any evidence in the circuit court. We shall make liberal use of the stipulation in reciting the facts.

Purportedly acting pursuant to Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 48,[1] the Board of County Com-

---

1. In relevant part, Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 48 (b) provides:

"(b) *Discounts for payments made prior to October 1.* — Any

missioners for Calvert County (the county commissioners), appellee herein, enacted in December 1975, Resolution No. 51-75, entitled: "An Ordinance Establishing a Graduated Scale of Discounts for Payment of County Real Estate Taxes Prior to October 1." The ordinance established for the 1977 fiscal year a 40 percent discount on county real estate taxes up to and including the amount of $1,000 if paid by August 1, 30 percent if paid by August 15, 20 percent if paid by September 1, and 10 percent if paid by September 15; a 20 percent discount on such taxes in excess of $1,000 up to and including $10,000 if paid by August 1, 15 percent if paid by August 15, 10 percent if paid by September 1, and 5 percent if paid by September 15; and a 5 percent discount on all such taxes above $10,000 if paid by August 1, 4 percent if paid by August 15, 3 percent if paid by September 1, and 2 percent if paid by September 15.

The county commissioners, though professing in the ordinance "to encourage the payment of County real estate taxes prior to October 1 to enable the county to use and/or invest the taxes collected for the benefit of the County," concede that the true purpose of the scheme of graduated discounts allowed in the ordinance was to alleviate the property tax burden on those with moderate or lower incomes, who would be apt to own residential or agricultural

---

county, city or town, or taxing district as to its own taxes, may allow such discounts for payments made prior to this day of October 1 . . . . Notwithstanding the provisions of this subsection, in Garrett County a discount of 5% on all county taxes shall be allowed during the months of July and August; and a discount of 4% shall be allowed on all county taxes paid during the month of September. Notwithstanding the provisions of this subsection, in Allegany County, a discount of 5 per centum (5%) shall be deducted from all tax bills for county purposes which are paid during the month of July succeeding the levy thereof; a discount of four per centum (4%) shall be deducted on all such tax bills during the month of August following the levy thereof; and a discount of three per centum (3%) shall be deducted from all such bills paid during the month of September following the levy thereof. Notwithstanding the provisions of this subsection, in Baltimore County a discount of two percent on all county real estate taxes shall be allowed during the month of July; and a discount of one percent shall be allowed on all county real estate taxes paid during the month of August . . . ."

property assessed at significantly lower values than would be large commercial or industrial properties.

Appellant Baltimore Gas & Electric Co. (BG&E) is the owner of a 1,135 acre tract of land in Calvert County on which has been constructed the Calvert Cliffs Nuclear Generating Station Unit No. 1 at a cost of $430 million, and on which is being constructed Unit No. 2 at an estimated cost of $325 million to be completed in 1977. For fiscal year 1976, BG&E paid Calvert County $6,852,873 in real estate taxes, which was 63 percent of the $10,952,739 levied for all such taxes in that year, thereby conferring upon BG&E the distinction of being the largest single real estate taxpayer in the county.

In fiscal year 1976, there were 18,634 real property taxpayers in Calvert County of whom 18,443, constituting 98.97 percent, paid tax bills of $1,000 or less and, assuming the same property tax bills, would therefore be eligible under the ordinance to receive the maximum 40 percent reduction in those total bills in fiscal year 1977. A total of 184 taxpayers, or .99 percent, paid tax bills ranging between $1,000 and $10,000 and would be eligible to receive as a maximum only a 20 percent discount on the amount over $1,000. BG&E was one of seven taxpayers, representing .04 percent, who paid tax bills exceeding $10,000 and would qualify only for a maximum 5 percent discount on amounts over $10,000.

Pursuant to Art. 81, § 48 (b), Calvert County allowed all taxpayers during the fiscal years 1957 to 1963 a uniform and equal two percent discount on all real property taxes based solely on the time of payment. During the fiscal years 1964 to 1975, the county allowed no discount for real property taxes. At the time of enactment of the ordinance in question here, 19 political subdivisions in Maryland were providing discounts, ranging up to five percent, based in each instance on promptness of payment. Prior to the enactment of the Calvert County ordinance, no political subdivision in Maryland had allowed discounts in the real property tax which varied according to the size of the tax bill.

It was further established by the stipulation that no investment lawfully available to the county commissioners could be expected to yield Calvert County a 40 percent return in 60 days, more than 240 percent annually, which would be necessary to offset the benefit extended to those eligible for the 40 percent discount. Moreover, no study had been conducted prior to enactment of the ordinance which related promptness in the payment of tax bills to their size, or which showed any significant changes in promptness of payment at the level of either $1,000 or $10,000. It was also conceded that the county commissioners could have produced the same real property tax revenue as they would have raised under the ordinance, with taxpayers taking advantage of the maximum discounts thereunder, by simply decreasing the county real property tax rate of $2.55 per $100 to $2.10 per $100 of assessed valuation without allowing any discounts. Finally, the stipulation established the obvious, that the taxpayers who would benefit from the 40 percent discount rate are individual property owners in the agricultural or residential category, while those paying more than $10,000 and eligible only for the maximum five percent discount on the excess are in the commercial bracket.

At the conclusion of the hearing on BG&E's petition for declaratory judgment and injunctive relief, the court ruled that the ordinance violated neither the Federal nor the State Constitutions, and that the county commissioners had not exceeded the statutory authority conferred upon them to grant discounts in the real property tax. As it did below, BG&E contends that the discount ordinance exceeds the statutory authority conferred by the General Assembly, and also that it violates both the uniformity requirement of Art. 15 of the Maryland Declaration of Rights and the Equal Protection Clause of the Fourteenth Amendment. Since we agree that the discounts established under the ordinance are not authorized by statute, it is unnecessary for us to reach the constitutional issues.

The contention by BG&E that the ordinance lacks statutory authority rests on the argument that the Legislature intended tax discounts to be established solely

for the purpose of inducing prompt payment of property taxes, and that the discounts allowed here, rather than effectuating that lawful objective, are merely a device aimed at redistributing the tax burden in circumvention of the limitations imposed by the General Assembly.

Whether the discounts being challenged are permitted by law must be determined in the first instance by a careful examination of the statute on which they are founded, since the cardinal rule of construction is to ascertain and carry out the real legislative intention. In determining that intention, we consider the language of an enactment in its natural and ordinary signification; only when the statute in question is ambiguous or of doubtful meaning need we look elsewhere to ascertain the legislative intention. *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 555-56, 325 A. 2d 748 (1974); *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 393-94, 306 A. 2d 534 (1973). Since the word "discounts," as used in § 48 (b) of Art. 81, is, in our view, clear and unambiguous, it is unnecessary for us to look elsewhere to ascertain the intention of the Legislature.

Initially, then, we decide whether, as urged by BG&E, tax discounts are permitted under the statute solely to encourage the prompt collection of taxes. That they are limited to this purpose is apparent, we think, from the meaning of the word "discounts" as used in § 48 (b). Although we have never had occasion to define the term in the context in which it is used here, it is our view that it was employed by the Legislature in its plain and ordinary sense. A term used in a statute, not there specifically defined, should be construed as having its ordinary and commonly accepted meaning. *Scoville Serv., Inc. v. Comptroller, supra,* 269 Md. at 395; *Gaspin v. Browning,* 265 Md. 552, 555, 290 A. 2d 507 (1972); *Arundel Supply Corp. v. Cason,* 265 Md. 371, 377, 289 A. 2d 585 (1972). A primary meaning of the word "discounts" in Webster's Third New International Dictionary (unabridged 1971), as the county commissioners recognize, is "an abatement or reduction made from the gross amount or value of anything . . . [as] a proportionate

deduction from an account as [a] debt . . . usually made for cash or prompt payment." *Cf. Tatelbaum v. Chertkof,* 212 Md. 475, 480, 129 A. 2d 680 (1957).

Historically, tax discount legislation has been aimed at fostering prompt payment of taxes. As the Supreme Court of Pennsylvania said in *Keator v. Lackawanna County,* 292 Pa. 269, 141 A. 37, 38 (1928):

> "The act permitting the retention of 5 per cent. by the taxpayer is for the welfare of the government. In conducting the affairs of a county when taxes are assessed, the county commissioners find its financial resources at a low ebb, continuing to get lower as spring and summer months approach. It becomes necessary to secure money immediately to conduct the business of the county. The outlays to be made by the county include court and jail expenses, care of the poor, payment for the keeping of the insane, and many other disbursements that do not admit of delay in payment. The Legislature adopted an inducement for prompt payment in districts where ordinarily collections are not rapid and are difficult; it enables counties to replace the deficit at least partially. Again, the deduction may be treated as a collection fee in districts not compactly built. In such districts the expenses of collection are greater than in the more compact or built-up sections. The fee has the effect of producing an immediate revenue for county purposes."

*Accord, Board of Education v. Sea,* 167 Ky. 772, 181 S. W. 670, 674-75 (1916); *Louisville & N.R. Co. v. City of Louisville,* 16 Ky. Law Rep. 796, 29 S. W. 865 (1895).

Any possible doubt that the General Assembly authorized counties and other local subdivisions to allow tax discounts for the sole purpose of encouraging prompt payment is removed by examination of Code (1957, 1973 Repl. Vol.) Art. 25, § 3 (h) and § 48 itself. Section 48 of Art. 81 appears under the subtitle "When Taxes Are Payable." As we indicated

earlier, subsection b, which is captioned "Discounts for payments made prior to October 1," authorizes "discounts for payments made prior to . . . October 1" and allows penalties to be imposed "for failure to make payment by or after [sic] that day." Among the express powers granted by Art. 25, § 3 to noncharter counties such as Calvert is that found in § 3 (h): "To provide for the prompt collection of all taxes due the county by authorizing discounts or imposing penalties." How well the county commissioners understood the purpose of this tax-discount legislation is revealed by the very first clause in the preamble of the ordinance which reads:

> "WHEREAS, the Board of County Commissioners for Calvert County desires to encourage the payment of County real estate taxes prior to October 1 to enable the County to use and/or invest the taxes collected for the benefit of the County, and therefore . . . has prepared an Ordinance authorizing a graduated scale of discounts from County taxes for such early payment;"

In sum, then, counties and other local subdivisions are authorized by statute to allow tax discounts solely for the purpose of encouraging the prompt collection of taxes.

Given the proposition that tax discounts may be allowed for no purpose other than to encourage prompt payment of taxes, there is little to sustain the ordinance here. Wholly apart from the concession of the county commissioners that the discounts in question were designed to benefit property taxpayers in the low and moderate brackets, the stipulated facts themselves amply demonstrate that this was the sole purpose. As the county commissioners quickly concede, no investment lawfully available to them could possibly yield an annual rate of return equivalent to 240 percent, which, in effect, would be required to compensate for the 40 percent discount. Without undertaking to suggest where the line of impermissibility must be drawn, we merely observe that the maximum discount rate mentioned in § 48 (b) is five percent,

and that the highest amount ever known to have been allowed in this state was six percent. In each instance, moreover, the discount allowed has been uniform within the political subdivision.

The conclusion is inescapable, therefore, that the lip service paid in the preamble to the encouragement of the prompt payment of taxes is merely window dressing for the true object of the discounts, to make an "end run" around the statutory limitation. Accordingly, we hold that since the discounts allowed here exceed the authority granted by statute, the ordinance cannot stand.

> *Judgment reversed; remanded for entry of a judgment conformable to the views expressed herein; appellees to pay costs.*