STATE OF MARYLAND COMMISSION ON HUMAN RELATIONS *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 142, September Term, 1976.]

*Decided March 30, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Risselle Rosenthal Fleisher, Acting General Counsel,* with whom was *Jacob J. Edelman* on the brief, for appellant.

*Elise Jude Mason, Assistant City Solicitor,* with whom were *Benjamin L. Brown, City Solicitor* and *Ambrose T. Hartman, Deputy City Solicitor,* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 43 *infra.*

The question presented in this case is whether the State of Maryland Commission on Human Relations (the commission) possesses statutory authority to investigate discriminatory employment practices allegedly committed by official agencies of the City of Baltimore (the city). The Circuit Court of Baltimore City (Cole, J.) held that it does not. An appeal to the Court of Special Appeals followed, but we granted certiorari before the case was heard by that court. We reverse.

This appeal stems from two complaints filed with the commission. The first charged the Baltimore City Department of Finance with racial discrimination in the discharge of one of its employees, and the other charged the Baltimore City jail with similar discrimination in the suspension of one of its employees. In both instances,

identical complaints were also filed with the U. S. Equal Employment Opportunity Commission, but were referred to the commission pursuant to 42 U.S.C. § 2000e-5 (c) (Supp. V 1975). When the two city agencies each refused to comply with investigatory subpoenas requiring production of certain employment records, the commission petitioned the circuit court, pursuant to Maryland Code (1957, 1972 Repl. Vol.) Art. 49B, § 14 (d), for an order requiring compliance. The city responded with a motion raising preliminary objections in which it challenged the authority of the commission to investigate complaints of alleged discrimination against the city. The circuit court ruled after extended argument that the commission lacked statutory authority to investigate employment practices of the political subdivisions of this state, and entered an order dismissing the enforcement action. It rested this decision on the ground that political subdivisions had not been expressly included within the statutory definition of an "employer."

Legislation banning discriminatory employment practices was initially introduced to Maryland in 1965. At the legislative session that year, the General Assembly enacted Chapter 717, which added to Art. 49B several new sections under the subtitle "Discrimination in Employment." The declaration of policy, which now appears in § 17 of Art. 49B, in relevant part states:

> "It is hereby declared to be the policy of the State of Maryland, in the exercise of its police power . . . to assure all persons equal opportunity in receiving employment . . . regardless of race, color, religion, ancestry or national origin, sex, age, marital status, or physical or mental handicap . . . , and to that end to prohibit discrimination in employment by any person, group, labor organization, organization or any employer or his agents."

Section 18 of Art. 49B contains certain definitions applicable to the subtitle, the construction of which is determinative of the outcome here. Subsection a defines a "person" to include "one or more individuals, labor unions, partnerships,

associations, *corporations*, legal representatives, mutual companies, joint-stock companies, trusts, [or] unincorporated organizations . . . [.]" (emphasis added). Subsection b, in pertinent part, defines an "employer" as "a person engaged in an industry or business . . . ." It also expressly includes "the State of Maryland to the extent as may be provided [elsewhere in Art. 49B]." [1]

In urging reversal, the commission argues initially that the broad statement of policy in the statute reflects a legislative intent to eliminate discriminatory employment practices committed by *all* employers in the state, and that this purpose is reinforced by the statutory definitions of "person" and "employer," since they do not specifically exclude political subdivisions as a class of employers covered by the fair employment practices legislation. In effect, the commission urges, by not excepting Baltimore City and the other political subdivisions of this state from the broad sweep of the declaration of policy, the General Assembly impliedly included them. There is, however, a fatal flaw in this contention.

Even if we assume for the sake of argument, as the commission states, "that implication may be used to effectuate the broad, stated purpose of the statute," *see Huffman v. State Roads Commn.*, 152 Md. 566, 584, 137 A. 358 (1927), this proposition overlooks the definition of the term "person" as used in the statute. In short, if a political subdivision is to be deemed an employer solely in terms of subsections a and b, it must meet the definition of a "person" set forth in § 18 (a). And to do so, it must necessarily be regarded as a "corporation," since none of the other categories enumerated therein is remotely applicable.

The City of Baltimore, however, is neither a corporation nor a person within the meaning of § 18 (a). The state and its creatures, which include political subdivisions such as Baltimore City, generally are not included within the class

---

1. Section 11B of Art. 49B prohibits discriminatory employment practices by state agencies or employees, but limits the authority of the commission "to investigation, conciliation, mediation and reporting to the Governor . . . ."

meant by the words person, corporation or body corporate in a statute, although they may be included where such an intention is manifest. *Harden v. Mass Transit Adm.*, 277 Md. 399, 408-409, 354 A. 2d 817 (1976), *aff'g* 27 Md. App. 590, 342 A. 2d 310 (1975); *M. & C.C. v. Balto. Gas Co.*, 232 Md. 123, 135-36, 192 A. 2d 87 (1963); *Phillips v. Baltimore City*, 110 Md. 431, 437-40, 72 A. 902 (1909). Since no such intention is manifest here, the general rule applies. That the General Assembly did not regard the state as being a corporation within the definition of § 18 (a) is apparent from the fact that in 1969 it thought an amendment to § 18 (b) was necessary for the very purpose of expressly including the state as an employer. It follows, therefore, that neither could the General Assembly have regarded political subdivisions of the state as corporations within the meaning of § 18 (a).

Wholly apart from the Legislature's understanding of the definition found in § 18 (a) is the interpretation placed upon it by the commission itself. In its Annual Report of January 1970, at 19, the commission stated flatly that the law was then applicable to *"private* employers with 25 or more employees." (Emphasis added). One year later, in its January 1971 Annual Report at 23, it outlined this legislative proposal:

> "Coverage should be extended to include departments and agencies of State and *local* governments, to insure that they be treated under the statute in the same manner as *private* employers. Under current provisions, enforcement powers are lodged with the Commission on Human Relations only with respect to *private* employers; Commission findings of discriminatory practices in State agencies must be submitted to the Governor for any action he deems appropriate." (Emphasis added).

It is apparent, then, that if Baltimore City was in 1971 a "person" or "corporation" within the meaning of § 18 (a), neither the General Assembly nor the commission was aware of it.

Within the framework of an analysis limited strictly to § 18 (a) and (b), therefore, the trial court was correct in observing that no provision, express or implied, had been made for inclusion of political subdivisions as employers. Where the court fell into error, however, was in ending its inquiry at that point and in not taking into account the action of the General Assembly at its 1973 session.

Section 18 (a) of Art. 49B tracks verbatim the language of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (a) (1970), as it stood prior to 1972. In that year, the Congress enacted the Equal Employment Opportunity Act of 1972, which, in relevant part, amended § 2000e (a) by expanding the definition of "person" to include "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e (a) (Supp. V 1975). In addition, Congress amended § 2000e (b) by defining "employer" as one employing "fifteen or more employees" rather than "twenty-five or more," and by deleting the previously existing exclusion from coverage for "a State or political subdivision thereof." The result, of course, was to make the federal law applicable to the states and their political subdivisions.

At its 1973 session, the General Assembly enacted Chapter 493, which repealed and reenacted §§ 18, 19 and 20 of Art. 49B. Other than to re-define an "employer" as one having fifteen or more employees, rather than twenty-five, §§ 18 (a) and (b) were left intact. Among the new additions to § 18, however, was § 18 (e), which is virtually identical to the 1972 amendment of its federal counterpart, § 2000e (f).[2] Section 18 (e) provides:

> "The term 'employee' means an individual employed by an employer, except that 'employee'

---

2. It appears that the General Assembly's response to the 1972 federal amendment may have been prompted in part by a request from the commission: "... Under the employment sections of Article 49B, amendments are needed to conform the Maryland law to the 1972 amendments of Title VII of the Federal Civil Rights Act of 1964, so that we do not jeopardize our deferral status and grant privileges with the Equal Employment Opportunity Commission...." Maryland Commission on Human Relations Annual Report, January 1973, at 3.

does not include any person elected to public office or any person chosen by the officer to be on the officer's personnel staff, or an appointee in the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exception set forth in the preceding sentence does not include employees subject to the State or *local* civil service laws." (Emphasis added).

It is the 1973 enactment, particularly § 18 (e), which the trial court did not address, but which requires judicial construction here. In this Court, the city conceded at oral argument, correctly in our view, that the definition of employee in § 18 (e) has the effect of creating an ambiguity in § 18 as a whole. Faced with this ambiguity in the statute itself, we look elsewhere to ascertain the intention of the Legislature. *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A. 2d 241 (1976); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185, 333 A. 2d 313 (1975); *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 556, 325 A. 2d 748 (1974). The explanation which the city offers for § 18 (e) is that "perhaps" the General Assembly intended to recognize those employees who were subject to both "local civil service laws" and "state law," such as employees of the "Baltimore City Police Department" and of the "Department of Social Services." Our difficulty with this suggestion is that there is not the remotest support for it in the statute itself or in the form of legislative history, nor is there any other evidence of such legislative intent.

The only identifiable evidence of the legislative intention undergirding the enactment of Chapter 493 appears in its title. The title of an act may be referred to where the statute is of doubtful meaning to ascertain the legislative intent and purpose. *MTA v. Balto. Co. Revenue Auth.,* 267 Md. 687, 695-96, 298 A. 2d 413 (1973); *Unsatisfied Fund v. Bowman,* 249 Md. 705, 709, 241 A. 2d 714 (1968); *Truitt v. Board of Public Works,* 243 Md. 375, 394 n. 6, 221 A. 2d 370 (1966). In

relevant part, the title of Chapter 493 describes the act as follows:

> ". . . to define 'employer' to include any person employing fifteen or more employees; to define the terms 'employee' and 'religion'; to remove certain obsolete language; and *to otherwise generally conform* the State Fair Employment Practices Law to the 1972 amendments of Title VII, Federal Civil Rights Act of 1964." (Emphasis added).

We think the title of Chapter 493 sheds sufficient light on the enactment of § 18 (e) to reveal a legislative intent that employees of local subdivisions were to be covered by the state law on fair employment practices. Clearly, a major thrust of the 1972 amendments to § 2000e was inclusion of the states and their political subdivisions, as employers, within its coverage. To effectuate this purpose, Congress not only expressly defined them as employers, but also included the very language which the General Assembly subsequently adopted as the definition of employees in § 18 (e). Simply put, the last sentence of § 18 (e) has no function or meaning other than as part of a statutory scheme which includes the employees of local subdivisions within its protective ambit. That the General Assembly chose not to be as explicit as the Congress in including political subdivisions within the coverage of fair employment practices undoubtedly makes this a closer case, but nevertheless does not permit us to ignore the demonstrated legislative intent expressed in Chapter 493.

To hold that city employees are not covered, therefore, would be to treat virtually all of § 18 (e) as surplusage. Absent a clear indication to the contrary, however, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase shall be rendered surplusage or meaningless. *Firestone Tire & Rubber v. Supervisor*, 275 Md. 349, 353, 340 A. 2d 221 (1975); *St. Paul Fire & Mar. v. Ins. Comm'r*, 275 Md. 130, 142, 339 A. 2d 291 (1975); *A. H. Smith Sand & Gravel v. Dep't*, 270 Md. 652, 659, 313 A. 2d 820 (1974). No such "clear indication" is apparent to us. Nor are

we able to perceive any reasoned justification for ignoring this part of the statute.

We are reminded by the city that it has its own local machinery for dealing with unlawful employment practices. By local ordinance, it has established the Baltimore Community Relations Commission with authority to investigate discrimination by employers, including "any governmental unit, agency or employer as to which the City has the power to legislate." Baltimore City Code (1966) Art. 4, § 9 (2). That the General Assembly, when it enacted Chapter 493, was aware of the local commission in Baltimore and those which now exist in more than half the counties of this state, we are certain. Nevertheless, the existence of such agencies in some but not all of the political subdivisions affords no support by itself for the construction of Chapter 493 urged by the city.

We hold, therefore, that since its employees are protected by Art. 49B, § 18, the City of Baltimore is subject to the investigatory authority of the commission in regard to the fair employment practices laws of this state. Accordingly, it was error for the trial court to dismiss the enforcement suit filed by the commission.

> *Judgment reversed; remanded for further proceedings not inconsistent with this opinion; Mayor and City Council of Baltimore to pay costs.*

*Murphy, C. J., dissenting:*

The Court holds that employees of political subdivisions of the state, including the City of Baltimore, are within the coverage of the state law on fair employment practices. As a consequence, the Court concludes that political subdivisions are subject to the statutory authority of the Maryland Commission on Human Relations to investigate and rectify discriminatory employment practices. While I am heartily in favor of the result reached by the Court, it so plainly contravenes the legislative intention that I must respectfully dissent.

The majority recognizes that political subdivisions have never been, and are not now, included within the statutory definition of a "person" or "employer" subject to the Act's coverage as set forth in §§ 18 (a) and (b). It nevertheless reasons that political subdivisions are employers within the ambit of the Commission's authority because § 18 (e), newly added to the law by the 1973 amendment to Art. 49B, defines the term "employee" to include individuals "subject to . . . local civil service laws." That the General Assembly intended to include employees of political subdivisions within the protection of the state law is manifest, the majority holds, because the title to the 1973 amendments to Art. 49B provides that the Act was "generally [to] conform the State Fair Employment Practices Law to the 1972 amendments of Title VII, Federal Civil Rights Act of 1964."

The federal law, unlike the state law, specifies that the terms "person" and "employer" include "governments, governmental agencies, [and] political subdivisions," and that the term "employee" includes individuals "subject to the civil service laws of a . . . political subdivision." Had the Maryland legislature intended to conform the state law to the federal law in this vital particular, it would have amended the definition of a "person" or "employer" in §§ 18 (a) and (b) to include political subdivisions in conformity with the federal law. That it did not do so indicates quite clearly that the exclusion was deliberate. The terms "person" and "employer" are the controlling terms under the state law, as under the federal law, in determining who is subject to the law's provisions. That employees whose employers are not covered by the Act are necessarily precluded from its protection could hardly be more apparent.

As indicated, the term "employee" is defined in the federal law to include individuals "subject to the civil service laws of a . . . political subdivision" and thus goes hand-in-glove with the federal definition of an employer as including "governments, governmental agencies, [and] political subdivisions." The state law, on the other hand, does not include political subdivisions as "employers" and defines an

"employee" in § 18 (e) to mean an individual "employed by an employer," with exceptions listed which are not applicable to individuals "subject to ... local civil service laws." Although the § 18 (e) definition of an "employee" may be badly mangled, the legislature quite obviously did not intend to include individuals employed by political subdivisions under the Act since political subdivisions are neither a "person" nor "employer" subject to the Act's provisions; and hence their employees are not "employed by an employer" within the contemplation of § 18 (e).

The majority relies heavily on the title to the 1973 amendments to accomplish what the amendments themselves did not do. While the title of an Act may be considered in doubtful cases in ascertaining the intention of the legislature, it will not be permitted to control the express language of the Act. *Engel v. Baltimore*, 140 Md. 284, 117 A. 901 (1922); 2A Sutherland, *Statutory Construction*, § 47.03 (4th ed. 1973). I believe the majority has erred by inferring from the title an intention at odds with the express language of the statute.