Dear Mr. Bradlee:
You have requested our opinion on several issues related to plans of the Historic St. Mary's City Commission to reconstruct, on its original foundations, the first permanent Roman Catholic Chapel in the English Colonies. Your specific questions are as follows:
1. May a reconstructed Catholic Chapel, or the land on which the original Chapel stood, be given by the Commission to the Archdiocese of Washington, presumably for the site then to be used as a place of Catholic worship?
2. Do Article 27, §§ 265 and 267 of the Maryland Code apply to the Commission?
3. If these sections do apply to the Commission, do they inhibit or prevent the Commission from proceeding with the reconstruction of the Chapel? If the reconstruction does not disturb any human remains, is a permit under these sections required? Did the Commission's activities in entering the tomb of Royal Governor Sir Lionel Copley require a permit?
Our opinion is as follows:
1. The Establishment Clause of the First Amendment to the United States Constitution would prohibit the Commission from conveying a State asset, whether unimproved land or a building, to a religious organization for less than its fair market value. Therefore, the Commission may not donate the site of the Chapel to the Archdiocese of Washington.
2. Article 27, §§ 265 and 267 do not apply to the activities of a State agency, including the Commission.
In light of our answer to your second question, we need not consider the third group of questions.
 I Background
Under § 24-504(a)(3) of the Education ("ED") Article, Maryland Code, as added by Chapter 583 (Senate Bill 393) of the Laws of Maryland 1997 (effective July 1, 1997), the Historic St. Mary's City Commission is an "independent unit of the Executive Branch of government that operates in the Office of the Governor." Prior to this reorganization, the Commission was a unit within the Department of Housing and Community Development. See
Article 83B, § 5-201 (repealed on July 1, 1997).
In general, the Commission's purpose "is to preserve and protect the archeological and historical record of Maryland's first colonial capital and to appropriately develop and use this historic and scenic site for the education, enjoyment, and general benefit of the public." ED, § 24-503(a). One of the Commission's particular purposes is to "enhance, where feasible, the . . . buildings that reflect and display the early colonial historic characteristics of the site." ED, § 24-503(b)(3). In an uncodified provision in Chapter 583, the General Assembly instructed the Commission to "[g]ive priority to the reconstruction of the first Roman Catholic Chapel in the English Colonies and . . . [r]equest the Historic St. Mary's City Foundation, a private non-profit corporation, to undertake the Chapel reconstruction and raise private funds for the project in order to avoid any constitutional problems with reconstruction of a religious structure and to expedite the reconstruction of this important historical structure." Chapter 583, Section 9.
Your letter indicates that the Commission is carrying out the legislative instruction: "The Historic St. Mary's City Foundation is poised to begin a $5 Million Dollar Capital campaign for the reconstruction of the Chapel, and has received their first $50,000 [contribution]. . . . The Commission and its staff [have] invested years in historical and archeological research . . . in order to assure that the reconstruction [will be] as historically faithful to the original Catholic Chapel as possible. It is our plan to reconstruct the Chapel as faithfully as we can, to make it resemble as closely as possible what it was — a Jesuit Chapel, the first Catholic Church in English-speaking America."
 II Conveyance of Land to Archdiocese
As we understand the situation, the Commission has been urged to consider a transfer of the land on which the Chapel stood or of the reconstructed Chapel itself to the Archdiocese of Washington. The advocates for this position evidently believe that the most appropriate use of the site is for a functioning Catholic church, not a living history museum.[1]
You have not asked us to comment on the wisdom, from a policy prospective, of the Commission's Catholic Chapel reconstruction plan, any transfer of the land or a reconstructed Chapel to the Archdiocese, or any other alternative for the site, nor would we do so. Rather, your request is limited to a legal issue: Would the Establishment Clause of the First Amendment prohibit an uncompensated transfer of the property to the Archdiocese?
The Establishment Clause prohibits governmental action "respecting the establishment of religion." A governmental practice that "touches upon religion, if it is to be permissible under the Establishment Clause, must have a secular purpose; and must neither advance nor inhibit religion in its principal or primary affect; and it must not foster an excessive entanglement with religion." County of Allegheny v. American Civil LibertiesUnion, 492 U.S. 573, 591 (1989). See Lemon v. Kurtzman,403 U.S. 602 (1971). In particular, the government may not "aid one religion, aid all religions, or prefer one religion over another."Everson v. Board of Educ., 330 U.S. 1, 15-16 (1947).
The Establishment Clause does not allow government to provide assistance that amounts to "direct and substantial advancement of the sectarian enterprise." Wolman v. Walter, 433 U.S. 229, 250
(1977). The Clause has most frequently been applied to strike down various forms of financial aid that directly subsidized the religious activities of sectarian schools. See, e.g., Sloan v.Lemon, 413 U.S. 825 (1973) (tuition reimbursement for parents whose children attend religious schools); Committee for Public Education Religious Libertyv. Nyquist, 413 U.S. 756 (1973) (reimbursement for maintenance and repair expenses where no attempt was made to restrict use to secular purpose); Lemon v. Kurtzman, 403 U.S. 602 (1971) (salary supplements for nonpublic school teachers at religious schools).[2] "Neutrality is what is required. The State must confine itself to secular objectives, and neither advance nor impede religious activity." Roemer v. Board of Public Works,426 U.S. 736, 747 (1976).
We can think of no clearer violation of the Establishment Clause than for a government agency simply to give a valuable asset to a religious organization to further the organization's religious objectives.[3] Therefore, the Commission may not donate the site of the Chapel, whether or not a reconstructed Chapel is built on it, to the Archdiocese of Washington for use as a place of Catholic worship.[4]
 III Applicability of Graveyard Desecration Statutes
A. To Commission
Unless authorized to do so by the State's Attorney, "[e]veryperson, his aiders, abetters and counselors, who shall be convicted of removing or attempting to remove from any graveyard, burial ground or vault in the State of Maryland any dead body which shall have been buried in such grave yard, burial ground or vault, shall be deemed guilty of a misdemeanor." Article 27, § 265. See Walser v. Resthaven Memorial Gardens, Inc.,98 Md. App. 371, 387, 633 A.2d 466 (1993), cert. denied, 334 Md. 212,638 A.2d 753 (1994). See generally Annotation, Constitutionality,Construction and Application of Criminal Statutes SpecificallyDenouncing Offenses Affecting Cemeteries, Burial Lots, Tombstonesand the Like, 132 A.L.R. 557 (1941). Further, except with the approval of the State's Attorney, "[a]ny person who willfully destroys, mutilates, defaces, injures, or removes any tomb, monument, grave stone, or other structure placed in any cemetery, or any building, wall, fence, railing, or other work, for the use, protection, or ornamentation of any cemetery in this State is guilty of a misdemeanor. . . ." Article 27, § 267(a).[5]
The Maryland Court of Appeals "has consistently held that the word `person' in a statute does not include the State, its agencies or subdivisions unless an intention to include these entities is made manifest by the Legislature." Unnamed Physicianv. Commission on Medical Discipline, 285 Md. 1, 12, 400 A.2d 396
(1979). See also, e.g., State Comm'n on Human Relations v. Mayorand City Council, 280 Md. 35, 39, 371 A.2d 645 (1977); Harden v.Mass. Transit Admin. 277 Md. 399, 408-09, 354 A.2d 817 (1976);Mayor and City Council v. Baltimore Gas Elec. Co., 232 Md. 123,135-36, 192 A.2d 87 (1963). Nothing in the language, history, or apparent purpose of Article 27, §§ 265 and 267 suggests a legislative intent that they be applied to the State.[6]
Indeed, as one state appellate court has held, "For purposes of the criminal law, the state is a person only as a person who may be crime victim. . . . [T]he sovereign cannot commit a crime. . . ."State v. Ziliak, 464 N.E.2d 929, 931 (Ind.App. 1984). Nor can the State prosecute itself.
The Commission is a State agency. Therefore, we conclude that Article 27, §§ 265 and 267 do not apply to the Commission.[7]
B. To Commission Officers and Employees
You have not asked us to discuss the circumstances under which these provisions might be enforced against officers and employees of the Commission, who are of course "persons." For the sake of completeness, however, we shall touch briefly on this issue.
In civil litigation, a plaintiff generally cannot evade a statute protecting the State's interest through the device of a suit against a State official. In State for the Use of Clark v.Ferling, 220 Md. 109, 112, 151 A.2d 137 (1959), for example, the Court of Appeals pointed out that civil suits, "not properly maintainable against the state or its agencies, cannot be enforced circuitously against an executive officer who carries out governmental functions."See also, e.g., Stanley v. Mellon, 168 Md. 465, 468,178 A. 106 (1935) (same).
The same basic principle governs application of the criminal law to public officers carrying out their duties. For example, laws against carrying weapons are ordinarily not applicable to officers who carry weapons in the course of their official duties. 63C Am. Jur. 2d Public Officers and Employees § 369 (1997). Additionally, for example, public officers who take a human life while acting in the discharge of their official duties are not criminally liable. Id. See also 40 Am. Jur. 2d Homicide § 24 (1968) (no penal or criminal responsibility is incurred by a sheriff, warden, or other official in carrying out a sentence of death). As a practical matter, employees as well as officers are not subject to prosecution for carrying out activities in direct furtherance of an agency's statutory mission, with the agency's knowledge and approval. That fact negates the element of criminal intent that is generally a prerequisite to prosecution.
An employee would remain subject to prosecution, however, for otherwise criminal conduct that, although occurring in the course of employment, is not a lawful element of the job. Police officers, for example, can be prosecuted for unauthorized and excessive use of force.
An opinion of the Attorney General cannot assess the circumstances, if any, under which the archeological activities of a Commission employee on the Chapel site would be both prohibited by Article 27, § 265 or § 267 and appropriate for prosecution. In light of the principle discussed in the preceding paragraphs, this judgment could be made only with detailed knowledge of the facts, particularly the relationship between the employee's activities and the Commission's statutory mission. The responsibility for making the judgment rests in the first instance with the State's Attorney.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] We are unaware of any request from the Archdiocese for the property. James Cardinal Hickey, the Archbishop of Washington, has provided written support for the Commission's plan to reconstruct the Chapel.
[2] The Supreme Court's most recent Establishment Clause case, Agostini v. Felton, 1997 WL 338583 (June 23, 1997), continues to support the proposition that a direct government subsidy of a religious activity would be unconstitutional.
[3] We are not here considering an asset that has little or no value. See Hawley v. City of Cleveland, 24 F.3d 814 (6th Cir. 1994).
[4] Our conclusion might be different if the Archdiocese were seeking to purchase the property for its current fair market value, but to our knowledge such a transaction is not under consideration and is not the subject of your question.
[5] It is also a misdemeanor for any person to willfully destroy, damage or remove any tree, plant, or shrub in a cemetery. § 267(b).
[6] The history of Article 27, § 265 is set out in 39Opinions of the Attorney General 179 (1954). That opinion was overruled on other grounds in 76 Opinions of the Attorney General
___ (1991) [Opinion No. 91-004 (January 30, 1991)].
[7] In light of this conclusion, we need not attempt to apply the statutes to the specific activities of the Commission identified in your letter.
 *Page 15